# Corey v. Wadsworth *et al.*[*]

*Bill in Equity to set aside Sale of its Assets by a Corporation to a Director as being Fraudulent as against Corporate Creditors.*

1. *Insolvent corporation; assets not trust funds.*—The assets of an insolvent corporation do not constitute a trust fund in the hands of its officers and managers, for the payment of its debts; and the directors and officers of such corporation are not trustees of its assets for the benefit of its creditors. (Following *O'Bear Jewelry Co. v. Volfer & Co.*, 106 Ala. 205.)

2. *Fraudulent conveyance; what constitutes the reservation of a benefit.*—A benefit reserved, which will vitiate a transfer of property by an insolvent debtor in the payment of a debt, is an undue benefit, and essentially and necessarily the securing of some advantage beyond and in addition to the satisfaction of the debt sought to be paid.

3. *Insolvent corporation; directors can prefer themselves in payment of bona fide debt.*—An insolvent corporation can make a valid transfer of its assets to one or more of its directors in payment of *bona fide* debts due from the corporation, thereby preferring such directors to other creditors in payment of its corporate debts; and this is true even though the directors so preferred participated in the director's meeting which authorized such preference, and con-

* This case is reported here, out of the order of its announcement, because of its importance, and because it has been pending in this court so long a time.

[Corey v. Wadsworth *et al.*]

trolled its action. *(Mary Lee Coal & Railway Co. v. Knox &
Co.*, 110 Ala. 632, in so far as it conflicts with the principle
here announced, overruled.) COLEMAN, J., *dissenting.*

4. *Same; how payment is made to creditor who is also a debtor of
the corporation.*—A creditor of an insolvent corporation, who
is also, in a less amount, the debtor of the company, can not
take corporate property in payment, except to the amount
his claim is reduced by taking therefrom his indebtedness
to the corporation.

APPEAL from the Chancery Court of Morgan.

Heard before the Hon. WILLIAM H. SIMPSON.

The bill in this case was filed by W. W. Wadsworth,
as a creditors' bill against the appellant Lorenzo Corey
and the Decatur Building Supply Company; and
sought to have set aside and annulled as fraudulent and
void certain transfers of its property by the Decatur
Building Supply Company to the defendant Lorenzo
Corey, and to compel the said Corey to account for the
value of the assets of the Decatur Building Supply Com-
pany so transferred to him and appropriated by him.
The material facts as averred in the bill and answer,
and disclosed by the evidence are as follows: Prior to
1887, the Decatur Building Supply Company was in-
corporated under the general laws of Alabama, Decatur
being the place of its business habitation. Wadsworth,
the complainant had, at various times between the lat-
ter part of the year 1887 and May 19, 1888, sold and
shipped to the Decatur Building Supply Company lum-
ber and shingles. In payment of the lumber and
shingles, the Supply Company gave to Wadsworth sev-
eral drafts, which were not paid, the aggregate sum of
the said several drafts amounting to $1,400, all of which
were past due when the bill in this case was filed in Jan-
uary, 1891. In February, 1888, Lorenzo Corey, one of
the defendants, became a stockholder in the Decatur
Building Supply Company, and thereafter he became a
member of the board of directors and president of said
company, which position he held at the time of the oc-
currence of the matters and transactions now com-
plained of. On May 15, 1888, the said Lorenzo Corey,
together with other officers and stockholders of the De-
catur Building Supply Company, entered into an agree-
ment with the Exchange Bank of Decatur, by which

they bound themselves, as sureties, or grantors of the said Decatur Building Supply Company, for the payment to the bank of such indebtedness as said company might incur not exceeding $6,000. By the end of June. 1888, the bank had loaned to the Building Supply Company the sum of $6,000 and took its notes therefor. These notes were subsequently paid by Corey. One Hoy, the brother-in-law of Corey, was the vice president and general manager of the Decatur Building Supply Company. From the 19th to the 23d of July, 1888, said Building Supply Company, through its directors and officers, sold a large part of its stock in trade, consisting of doors, sashes, blinds, &c. to Corey, in consideration or in payment of a debt of $6,000, and in alleged payment of their indebtedness which Corey claimed said company owed him. At the time of the transfer of this property to Corey, the Decatur Building Supply Company was insolvent, and within three or four days after the consummation of the transfer to Corey, on, to-wit, July 26, 1888, the Decatur Building Supply Company, acting through said Corey as its president, assigned all of its remaining assets to a trustee for the benefit of its general creditors. The total indebtedness due these general creditors amounted to more than $22,000, and they received not more than 15 per cent. thereof from the property and assets of the corporation conveyed in the deed of assignment. It was further shown by the evidence that while the Decatur Building Supply Company was in an insolvent condition, Corey procured it to order a lot of sash, doors and blinds, although they were charged to the company, and that at various times he received goods from the company without being charged therefor. The bill was amended so as to make it a bill in behalf of the complainant and all other creditors of the Building Supply Company who might come in and make themselves parties complainant and assume their proportionate share of the costs. Under this amendment several creditors of the Supply Company were made parties complainant. The other facts of the case necessary to a full understanding of the decision on the present appeal are sufficiently set forth in the opinion.

On the final submission of the cause, on the plead-

[Corey v. Wadsworth *et al.*]

ings and proof, the chancellor rendered a decree granting the relief prayed for, and ordering said conveyance to the defendant Corey to be set aside and annulled, because fraudulent and void as to the creditors of the Decatur Building Supply Company. From this decree the present appeal is taken, and the rendition thereof is assigned as error.

HARRIS & EYSTER, for appellant.—(No brief came into the hands of the reporter.)

E. W. GODBEY, *contra.*—Corey's presidency and general managership of the Decatur Building Supply Company; the extraordinary powers conferred upon these positions by virtue of new by-laws compiled by a committee of his own appointing; his assumption of the large claim against his brother-in-law, Hoy, whose brief general managership was the last; his appropriation at first cost, less freight, of many cargoes of material ordered from distant dealers in the name of the moribund corporation; the appropriation of other choice articles at an unjustifiable discount, and of still others without charge; the unaccountable loss, during his six months administration, of the $6,000 borrowed from his Exchange Bank, of the $25,000 represented by the capital stock, of the $27,000 worth of material for which creditors were never paid, and of the $4,000 derived from his negotiation of the Peters' notes, followed by an assignment for creditors, of assets whose nominal value was only $15,000, and which produced for creditors a dividend of only 15 per cent., is a striking object lesson of the wisdom of that rule forbidding preferences to corporate officers, which the following authorities declare to be well established: *Conover v. Hull,* 45 Am. St. Rep. 810; Wait on Insolv. Corp. Sect. 162; *Rouse v. Bank,* 46 Ohio St. 493; *Lyon, etc. Hardware Co. v. Perry etc. Co.* 22 Law. Rep. Ann. 807; *Sicardi v. Keystone Oil Co.* 149 Pa. St. 148; *Howe etc. Co. v. Sandford etc. Co.* 44 Fed. Rep. 231; *Bonney v. Tilley,* 109 Cal. 346; *Tillson v. Downing,* 63 N. W. Rep. 837; *Northwestern etc. Co. v. Cotton,* 70 Fed. Rep. 155; *Lowery etc. Co. v. Empire etc. Co.* 91 Ga. 624; *Sutton v. Mfg. Co.,* 11 C. C. A. 321; *Adams v. Milling Co.,* 35 Fed Rep. 433; *Rose-*

[Corey v. Wadsworth *et al.*]

boom v. Whitaker, 132 Ill. 81; Haywood v. Lumber Co., 64 Wis. 639; W. P. Noble etc. Co. v. Mt. Pleasant etc. Inst., 42 Pac. Rep. 869; 1 Beach on Priv. Corp. 241; 17 Am. & Eng. Encyc. Law, 122; Hill v. Lumber Co., 113 N. C. 173.

2. The director is a part of the corporation and between the two there is a substantial identity.—M. & O. R. R. Co. v. Nicholas, 98 Ala. 92. Directors are sole arbiters between contending candidates for preference, and they should preserve an attitude of impartiality in the consideration of such questions. The corporation has no knowledge or notice, or power to will or to act, save that possessed by its directors; and as no natural person is thus dependent on others for the exercise of every function, so, no analogy between natural persons occupying relations of debtor and creditor is pertinent. As corporate disasters are due to the faults or mistakes of directors, they should not fare better than creditors having no part in the administration of affairs.

3. The right to prefer creditors is not expressly conferred upon an artificial person, it is not a power incident or necessary to the accomplishment of any of the ends of its creation, and being inequitable, it can not be implied.—Lyons v. Perry, supra; Sutton etc. Co. v. Hutchinson, supra; Rouse v. Bank, supra; Tilson v. Downing, supra.

The excess of Corey's debts on the books of the company over his credits, the undervaluations of items of debits, his inability to designate the items for his alleged claim against the Supply Company; his failure to claim of the assignee, any dividend on such claim, while receiving dividends on claims subsequently purchased from outside creditors, and the vacillation of his pleadings in fixing the amount of said claim at various times in divers sums, ranging from $9,000 to $800, destroy his contention that he is in any sense a creditor of the defunct corporation.

5. The failure of Corey while appropriating assets for the liquidation of the bank's claim for which he was bound as surety, to deduct the amount due by himself to the Supply Company, was fatal to the validity of the transaction.—Harmon v. McRae, 91 Ala. 401.

6. The seizure of the staple articles of the concern at

[Corey v. Wadsworth *et al.*]

gross undervaluation, to pay, long before maturity, a debt with exorbitant and illegal interest, was a wanton sacrifice, and rendered the appropriations fraudulent, even if the corporation had been then solvent.—*Cole v. Iron Co.*, 133 N. Y. 164; *Bliss v. Matterson*, 45 N. Y. 22; *Bank v. Ashville*, 21 S. E. Rep. 948.

McCLELLAN, C. J.—One of the main questions in this case is whether an insolvent and failing corporation can make a valid transfer of property to one of its directors in payment of a debt owing from the corporation to him, thus preferring him to other creditors in the payment of its debts, or, perhaps more accurately, whether directors of such corporation can prefer themselves in the payment of corporate debts. The writer not only has very affirmative views favorable to the validity of such a transfer on abstract principles, but he is further quite convinced that the point has been to all intents and purposes so decided by this court. We are, of course, aware that many courts have held the contrary view, and some of the text writers have strongly condemned the doctrine we believe to be absolutely sound; some of them, indeed, resorting largely to invective and epithet in denunciation of the idea that a corporation may pay a just debt to an honest creditor though he be a director in preference to the just debts of other honest creditors who are strangers to the corporation. We have no epithets to apply to such courts and writers, nor to the rule they declare. Many of them are able expounders of the law, and all of them are doubtless actuated only by a purpose to ascertain and expound the true principle in this connection. And they may be right, and we wrong; but we do not think so, and we shall endeavor to give the reasons for the faith that is in us.

We are utterly unable to conceive upon any just and sound principle or consideration the least shadow of difference or distinction between the debt of a director and the debt of a stranger against a corporation, upon which could be predicated one rule in respect of a preference by the corporation in the payment of the former and another rule in respect of such preference in the payment of the latter. Take the case we have here, as-

[Corey v. Wadsworth *et al.*]

suming for the discussion of the point immediately under consideration that the transaction involves no actual fraud. The corporation is a going concern, and its managers do not contemplate its failure. But it is in debt and needs money to continue its business and to pay its maturing obligations. It borrows the money from a director directly or through a pledge of his credit. At the same time it incurs debts to strangers for supplies necessary in its business. The money borrowed from the director is used for corporate purposes. It is paid out to other creditors, or is applied to liquidate corporate expenses. So also the supplies constituting the consideration of the debts to strangers are applied to the authorized uses of the corporation and enure to its advantage. There is nothing covinous in the creation of either class of debts. Neither the advancing director nor the supplying stranger has any intention or expectation of receiving any undue or illegal benefit from the transaction he thus has with the corporation. It may well be that the director, being a stockholder, anticipates that the aid he gives the corporation in his individual capacity will redound to his advantage ultimately in the increased value of, or in dividends upon, his stock. But as all debts must be paid before the stockholder can be benefited by such a transaction, the intention and expectation of the advancing director involves and presupposes the payment of all corporated indebtedness. It follows obviously that in lending his money or credit to the corporation the director can have no purpose or intent inimical to existing or future creditors, but to the contrary the primary effect of the aid he thus gives the company is of affirmative benefit to its creditors. The stranger creditor, to the contrary, does expect a direct profit to himself by the transaction in which he becomes its creditor. If he lends it money, he expects and contracts for interest—and even this remuneration does not enure to the director who pledges his credit. If he sells his wares to it, he expects and contracts for a profit upon them. Of course all this is perfectly legitimate. But it shows that so far as the expectation of benefit goes the director who pledges his credit, as did the respondent here, stands in a less selfish attitude toward the cor-

[Corey v. Wadsworth *et al.*]

poration and its creditors than does the stranger who sells property to it on credit. And at least we may say that the director creditor and the stranger creditor —the respondent and the complainant in this case— stand in the creation of their debts equally untainted of wrong done or intended; and, regarded from the point of view of the inception of their claims, are equally and to like extent entitled to the favorable consideration of the courts and the just protection of the law.

It is equally clear that the corporation itself and its other creditors are, to say the least, as much benefitted by the money it borrows on the individual credit of the directors as by the wares it purchases on time from the stranger. As we have seen, both the money so borrowed and the property so purchased become assets of the corporation, enable it to prosecute its business, to pay its creditors and to meet its expenses. There is, in other words, nothing in the uses to which the money borrowed and the property purchased are applied or intended to be applied which differentiates the attitude and rights before the courts and the law of the director who pledges his credit from the attitude and rights of the stranger creditor. In the effects and results of their respective transactions as well as in the purposes and intents which actuated each to the thing he did is found no scintilla of evil, and nothing of wrong or injury to the corporation or its creditors which would entitle the one to more consideration than the other, which would accord to one rights denied to the other, or which would admit of a preference in the payment of the debt of the one and condemn as fraudulent a preference in the payment of the debt of the other.

A step further in unfolding this question and case: The expectations of the officers and managers of the corporation, entertained at the time of borrowing the money on the faith of the director, as to keeping the corporation a going concern and continuing indefinitely to carry on its business are disappointed. They find that notwithstanding the personal efforts of the director in pledging his credit to raise money for the business and creditors of the concern, the corporation cannot keep its head above water, but must discontinue its business, cease to be a going concern and apply its assets to the

[Corey v. Wadsworth *et al.*]

payment of its liabilities. Among these liabilities they find the debt due its director for money borrowed, and a debt due a stranger for property purchased. The assets are sufficient to pay one in full and a percentage only on the other. The debts were equally just and *bona fide* in their inception. The corporation and its creditors have been equally benefited by each of the transaction by which these debts, respectively, were incurred. Neither is tainted by any infirmative circumstance whatever. There is no more abstract justice in paying the stranger in full to the exclusion of the director, than in paying the director in full to the exclusion of the stranger. If one may be so paid, so may the other upon every conceivable consideration of justice and right. That the stranger creditor may be so paid to the exclusion of the director creditor nobody denies. Indeed there is a sort of alacrity and joyousness in many of the authorities so holding, as if the director creditor had been guilty of some enormous wrong or crime in advancing his money to the corporation for the primary benefit of its stranger creditors without reward or the hope thereof, and he, and his claim for simple reimbursement, were unclean and unrighteous things before the law. That the director creditor may be so paid is strenuously denied by many authorities, sometimes with an acerbity of statement and a bitterness of denunciation which happily is rarely found in juridical writings. And why may the director or creditor not be so preferred and paid? Confessedly his debt is a just one. Confessedly the corporation, its business and its creditors are benefited by the consideration of it as fully as by the consideration of the debt due the stranger creditor. Confessedly under a general assignment by the corporation he would be entitled to share upon the same footing as the stranger creditor. Confessedly, indeed, in every contingency and under all circumstances and conditions the director creditor and his claim stand upon the same footing and have the same rights as the stranger creditor and his claim, except only that, as is insisted, the corporation may prefer and pay the latter in full while the preference and payment in full of the former is fraudulent and void. There is, we are firmly of the opinion, no reason whatever for this

[Corey v. Wadsworth *et al.*]

distinction; and we believe it can be so demonstrated.

Let us first examine the reasons which are advanced by the judges and writers who hold to that view. Nearly all of the adjudged cases which hold that an insolvent and failing corporation cannot convey property to its officers and directors in payment of their debts in preference to the debts of stranger creditors, rest their conclusions entirely upon the ground that the assets of such corporation constitute a trust fund in the hands of its officers and managers as trustees for the payment of its debts, and that such trustees cannot pay themselves in preference to other creditors. We content ourselves upon this point by saying that this "trust fund doctrine" has been utterly repudiated in this State in a thoroughly considered case, and by an opinion prepared with considerable care and research in which all the judges of this court concurred.—*O'Bear Jewelry Co. v. Volfer & Co.,* 106 Ala. 205; s. c. 28 L. R. A. 707; s. c. 54 Am. St. Rep. 31. But leaving the trust fund doctrine out of the case, it it sought to rest the conclusion that the transfer to a director involved in this case is fraudulent upon other grounds, being the same to which a text writer or two and perhaps some courts have referred a like conclusion. And what are they?

In the first place the notion is advanced that such a transfer involves the reservation of a benefit to somebody—whether to the corporation or to the director creditor or to the other creditors is not made at all clear in the statement of the general proposition; and when a more concrete statement is ventured upon, the identity of the person or entity receiving an undue benefit becomes more and more uncertain. And we do not hesitate to maintain that no benefit is, in such transaction, reserved, or in any way enures to anybody beyond what the law clearly and fully contemplates, allows and approves. What is a benefit reserved which will vitiate the transfer of property by an insolvent and failing debtor in the payment of a debt? Is it not in the nature of things an *undue* benefit? Is it not essentially and necessarily the securing of some advantage beyond and in addition to the satisfaction of the debt sought to be paid? Can there be any such thing as the reservation of a benefit when the whole effect of the transaction is

[Corey v. Wadsworth *et al.*]

the payment of a just and honest debt by the transfer to the creditor of property precisely equal in value to the amount of the debt? By such transaction there are benefits, of course, enuring to each party, but not such as the law condemns or as afford any ground for complaint on the part of the other creditors. The debtor is benefited by the liquidation of his liability, and the creditor is benefited by receiving the money which he is entitled to receive. But these are not undue or vitiating benefits: they contravene no principle of law or rule of moral action, but, to the contrary, mark the accomplishment of the ends of the law in the premises, in a manner not inconsistent with abstract justice nor with any tenet of sound morals. It is of no sort of consequence what the relations *aliunde* of the debtor and creditor are, personally or in estate or by contract. They may stand to each other as father to son, or brother to brother, or husband to wife, or principal to agent, or *vice versa;* and even as partners, but for a consideration to be hereafter adverted to. Whatever else and cumulative may be the relations of the parties, if one owes the other a just debt, he may, whether solvent or insolvent, pay that debt by the transfer of commensurate property without impeachment upon any legal or moral ground. The suggestion that a director or stockholder creditor receives a benefit in addition to the payment of his debt, in that thereby the corporation is relieved of the liabilities and his holdings of stock are enhanced in value, is palpably and obviously without the least shadow of merit. The stock can have no value to the prejudice of any creditor. All creditors must be paid before any of the assets of the company can go to its stockholders. An insolvent and failing corporation has not and can never have anything to go to its shareholders; and the payment of one or more debts to the exclusion of others cannot possibly result in giving a value to its stock, and thereby collaterally benefiting the director creditor whose debt is paid. And if it could be conceived that an insolvent and failing corporation could pay its debts and have assets over to form a basis of stock value, who would there be to complain of the benefit thus accruing to its officers and stockholders whose debts had been paid along with others? It is only creditors who can complain of undue

[Corey v. Wadsworth *et al.*]

benefits secured to the debtor or other creditors in the transfer of property in preferential payment of debts; and in the impossible case suggested, there would be no creditors, and hence nobody to be injured or prejudiced, and hence no wrong or injury done or suffered. One just and honest debt, it seems necessary to remark, is as just and honest as any other just and honest debts, and may be paid in the same way under the same conditions. The whole end of the law is, that all the property of an insolvent debtor shall be applied to his debts. The debtor may be a father, son, brother, husband, wife, principal, agent, corporation or individual. Whatever the outside relations are, the law requires only that his assets shall go to his creditors, and does not require that they shall go to them ratably; but only that for each dollar in value of such assets a dollar of honest indebtedness shall be paid wholly irrespective of whether the debt so paid is due to one creditor or many, or to all of the many. We draw a line. Upon one side of it is the insolvent debtor and his insufficient property. On the other are ranged his creditors and their claims. The law is simply and merely that that property must pass to the other side of that line, to somebody on the other side and to the payment in whole or part, as the case may be, of some to the exclusion of other claims on that side, or of all of them ratably. The property must go to the indebtedness; it must reduce the aggregate of the claims of the several creditors considered as one gross sum, and though it thus reduce the gross indebtedness only by satisfying in full a particular item entering into the aggregate, by paying one claim in full and nothing on the others, the law is satisfied, its ends have been met, its purpose effectuated; no undue benefit has been reserved; no undue advantage has been taken; and it lies in no man's mouth to complain.

But it is said, that "the officers of an insolvent corporation are in a position to know the real condition of the corporation, an advantage not attainable by creditors generally," and for this reason preferences in the payment of their debts should not be allowed. Has it ever been suggested before that better knowledge of a debtor's pecuniary condition by a particular creditor was any ground for declaring fraudulent and setting

[Corey v. Wadsworth *et al.*]

aside a preferential transfer to such creditor? Was such a doctrine ever ruled by any court? To the contrary, has it not been over and over again held by this court that, so long as all the creditor receives is the fair equivalent of his honest debt, his knowledge of his debtor's insolvency and even his perfect consciousness that the effect of the transfer to him will necessarily be to leave other creditors unpaid and without hope of payment, are matters wholly apart from the issue, wholly irrelevant and inconsequent? Knowledge on the part of the creditor, however accurate and exclusive, of the debtor's precarious situation, and of the injurious effects of a proposed transfer of property to such creditor, whether such knowledge be incident to the relations existing between the parties or not, is absolutely without a scintilla of influence upon a transfer of property at a fair valuation to pay an honest and adequate debt. Given the transfer at such a valuation in payment of such a debt, the law concerns itself in no degree whatever with the creditor's knowledge or information, or even with his purpose and intent. For whatever he knows or intends, he has taken only that which he is entitled to take under the law; and hence in the eyes of the law he has done no wrong.

Again, it is contended that the officers and managers of an insolvent and failing corporation must be held to the same line of duties and subjected to the same incapacities and liabilities as partners or mere members of an association of individuals. There is, in our opinion, no law or reason in this position. The fundamental and, in the present connection, all important differences between the managers of an insolvent and failing corporation, on the one hand, and partners and members of associations, on the other, lies in the fact that the corporate managers are not liable in any sense for the debts of the corporation, and partners and members of associations are individually liable to the fullest extent for all the debts of their partnership or association. The stranger creditor of a partnership or association is entitled, as against the members thereof, to take and apply to his debt not only all the property of the partnership or association but also all the property of each of its members to the entire exclusion of their claims as indi-

[Corey v. Wadsworth *et al.*]

viduals against the partnership debtor.

And indeed, there is a vitiating infirmity in a debtor and creditor transaction between a partnership and a partner from its very inception so far as other creditors are interested.  For if it could be conceived that a partner advancing money to his firm stands upon the same footing as other creditors abstractly speaking, the loan going, as it would, to reduce partnership liabilities would operate to cut down the advancing partner's ultimate individual liability, and, on the assumption that he would be entitled to have the loan refunded to him, the effect would be to reduce his liabilities as an individual partner by a transaction in which he in fact has paid or parted with nothing.  Of course this cannot be allowed; and this view of such a transaction is but another way of reaching the inevitable conclusion that the partner in such case is not a creditor of his firm in any sense against the claims of outside creditors.  The fact manifestly is that the contribution of money or property to a partnership by a partner beyond his share under the partnership articles, is, especially when the firm is insolvent, in the nature and has the effect of a payment by such partner on his individual liability for the partnership debts, and is essentially not the creation of a debt from the firm to him except as between the other partners and himself.  And this is so, of course, as to voluntary associations and their members.

Now as to corporations and their officers and stockholders:  No officer or stockholder of a corporation is at all or in any case liable for any debt of the corporation.  Nobody, we suppose, will question this proposition.  If an officer or stockholder lends his money to the corporation it does not go in reduction of his individual liability, because he is under no such liability; it is not in the nature of the payment of a debt to the creditors of the corporation because he owes them no debt. Neither he nor the corporation is benefited or injured either by the loan or its repayment, except to the extent there might be benefit or detriment to the parties if the loans were made by a stranger; and confessedly the loan creates a debt from the corporation to the advancing officer or stockholder not only as between the corporation and him, but also as between him and stranger credi-

tors of the company. And this whether the corporation be solvent or insolvent, in a prosperous condition or in failing circumstances. He may sue and recover his debt in full whatever the effect of such recovery on the claims of other creditors. If the corporation assigns or is being wound up, he like every other creditor is entitled to share in its assets. The corporation may pay him as it may pay any other creditor though the effect be to disable it to pay other creditors in full, since his is an honest and just debt, and the whole end of the law is the application of corporate assets, either ratably or preferentially, to the payment of honest and just debts. And the *quo modo* is immaterial. The payment may be made in money or by the transfer of property. So long as the honest creditor gets no more either in money or property than his just debt, no undue benefit is reserved to the corporation or enures to the officer creditor, and no detriment in legal contemplation results to other creditors; no wrong has been done to anybody; nobody has been unduly advantaged, and the transaction is lawful, honest and valid.

The suggestion that a transfer by directors to one of their number of property in payment of a debt is invalid as being the act of the party accepting the transfer has no merit dissociated from the exploded "trust fund" doctrine. On that doctrine the directors become trustees, and on the principle that a trustee cannot transfer the trust estate to himself as an individual, is rested the further proposition that directors of an insolvent corporation cannot, being trustees, transfer its property to themselves in payment of debts which the corporation owes them. But with the elimination of the main proposition, that such directors are trustees, falls the dependent proposition that they cannot prefer themselves in the payment of debts. With the trust fund doctrine out of the way, the separate corporate entity continues to exist for all purposes wholly unaffected by the fact of insolvency, and its functions must continue to be performed. These functions are performed by the directors for and in the name of the corporation, and their official acts are not their individual acts at all, but the acts of the corporation; and not being trustees for creditors, their acts when assailed by creditors are not

[Corey v. Wadsworth *et al.*]

subject to the rule that if a trustee contracts with himself in reference to the trust estate his acts are void at the election of or as against the *cestui que trust*. There being in such case no trustee, and no relation of trustee and *cestui que trust* between the directors of the corportion and its creditors, the matter stands thus: A corporation without assets to pay all its debts, owes its directors and it owes strangers. The debts of the two classes of creditors are equally honest and just, and stand upon the same footing in law and in equity. The corporation has an undoubted right to pay some creditors to the exclusion of others. Any creditor has the undoubted right to accept a preference. The corporation has the same right to pay its directors as it has to pay strangers. The directors have the same right to preferential payment as do strangers. To the exercise of this undoubted right to make preferences it is essential that the corporation must act. It can only act through the directors. If the directors cannot act to the end of preferring their own just debts—having the undoubted right to such preference—the preference cannot be made and the undoubted right of the corporation to make it and of the directors to accept it is denied and defeated. The ends of the law that the assets of the corporation shall be applied to such of its debts as the corporation prefers is defeated. And for what? Upon what ground? Not that the directors are under any incapacity to prefer themselves which can be referred to any principle of law. Not that they are trustees, for they are not trustees for the creditors. Not that they are agents of other creditors, for they are not such agents. Not that they occupy any other fiduciary relation to other creditors, for being only the agents of the corporation, and, in that capacity only, the trustees for stockholders alone, they bear and can bear to the creditors, who have to do with the corporation as an entity and not with the shareholders at all, only the relation of the agent of a debtor to his creditor, a relation which is obviously as devoid of every attribute of a fiduciary character as the direct relation of debtor and creditor. Upon what ground, then, we repeat, is rested the idea that directors cannot prefer themselves? Getting away from the trust fund doctrine, it is based upon the

bald assertion that the director in such case is acting
both for the corporation and himself, in contracting in
his representative capacity with himself as an individ-
ual; and this, it is said, the law will not allow. That
is the sole ground put forward. It cannot for a mo-
ment be sustained upon principle or well considered
authority. The results claimed do not follow. The
contract of a director with himself as an individual, the
sale of corporate property by directors to themselves as
individuals, is not void even as against the corporation
itself or the stockholders. Upon all reason and author-
ity it is perfectly valid, if not disaffirmed by the corpo-
ration itself or the stockholders. And the election be-
longs exclusively to the corporation and stockholders.
If they do not exercise it, the transaction must stand.
Strangers of course cannot question it, for they are
wholly without interest in the premises. General cred-
itors cannot question it, since no right of theirs has
been violated by it. They cannot hold the directors to
account as fiduciaries, as there are no fiduciary rela-
tions between them. As creditors their only right is
to have the corporate assets applied to just corporate
debts, and this right is not impinged upon but, to the
contrary, fully conserved by the payment of the just
debts of the directors. They have no lien upon corpo-
rate assets, they have no rights of ownership in corpo-
rate property. They cannot claim their debts should
be paid in full to the total or partial exclusion of other
equally honest and just debts. The property not being
impressed with a trust in their favor, and standing as
they do in no superior right to director creditors, they,
the right of preference being recognized, have no shad-
ow of right to insist upon even a *pro rata* application
of the assets to all indebtedness: their only right is to
insist that all the assets shall be applied preferentially,
or otherwise, to the indebtedness; and this right is ab-
solutely subserved, as we have seen, by the payment of
director creditors to the exclusion of stranger creditors.
They have no right to insist upon the equal payment of
all debts *pro rata*. The right of preference, which
every debtor confessedly has, necessarily involves favor-
itism, the right of choice of one creditor, and of any one
creditor, to the exclusion of others. It is utterly incon-

[Corey v. Wadsworth *et al.*]

sistent with all notions of equality; and as a natural person may prefer his relatives and his friends to the exclusion of strangers, so an artificial person may prefer its friends and those occupying official relations to it to the exclusion of strangers. There is, the writer thinks, no semblance of sound principle or well considered authority for a different conclusion. It seems to him that those courts which have taken a different view have been largely moved thereto by a consideration of the danger of fraudulent claims being brought forward by directors, and of the facility afforded directors by their positions to establish such claims, rather than by any just consideration of any recognized principle of law or equity obtaining in the premises. They have allowed themselves to be driven to the denial of a right altogether because of a practical difficulty in mere matter of evidence. They deny an undoubted right to the directors, because, forsooth, the persons asserting the right have opportunities for deceiving the courts as to the existence of the facts upon which it rests. They deny the right though proved beyond all peradventure in the particular case, because in other cases it may be supported by fraud and perjury. The same considerations are as applicable to other relations; and the courts might with equal force and propriety strike down all conveyances and transfers in payment of debts between parent and child, brother and brother, husband and wife, and the like, because those relations afford opportunities for simulation and fraud. Yet nobody pretends that such transfers in preferential payment of honest debts are under the ban of the law as being constructively fraudulent. And no more upon reason and principle and well considered authority can like transactions by directors be avoided on the ground that such officers have opportunities for fraud and simulation, which have, however, not been utilized in the particular case. It is not for the courts to be governed by such considerations. They are to ascertain the facts in each case and to apply the law thereto; and the law is not to be changed in its application in a given case by the fact that to apply it as it exists might be to admit of difficulties of proof in another case. If the danger of administering the law as it is, is sufficiently great and immi-

nent to require a change of the law, that is a matter for the legislature and not for the courts: It is a question of legislative policy and not of existing law.

We have considered this matter on principle at some length because of its importance, and because it has been not a little mooted in this State. For the same reasons we will now at some length refer to authorities sustaining the view we have declared. The first case to which we will invite attention, as well because of the ability of the court deciding it as because it is among older ones, is that of *Buell v. Buckingham & Co.*, 16 Iowa, 284. The opinion is by John F. DILLON, a judge and law writer of national reputation for ability and learning. Buckingham & Co. were general creditors of a corporation. Buell was also a creditor, a director thereof and its president. Buell participated with the other two directors, the presence of all three being necessary to a quorum, in a sale and transfer of the corporate property to himself in payment of the debt the corporation owed him. The transaction was assailed by Buckingham & Co. on the same grounds that are advanced by the complainant in the case at bar. Assuming Buell's participation as president and director in the sale to himself as an individual, Judge DILLON proceeds: "This makes it necessary to discuss the nature of the relations which Buell and the defendants respectively sustained to the corporation.

"In one respect, their relations were common and identical; they were both creditors. Their equities, in this respect, were equal and the same.

"Being an officer in the corporation did not deprive Buell of the right to enter into competition with other creditors and run a race of vigilance with them, availing himself in the contest, of his superior knowledge and of the advantages of his position, to obtain security for, or payment of, his debt. He has an advantage, it is true, but it is one which results from his position, and which is known to every person who deals with and extends credit to a corporation. This is one of the causes which has operated to bring corporate companies into discredit, and may constitute a good legislative reason for giving priority to outside creditors. But the legislature must furnish the remedy. That the act of Buell

was not legally or constructively fraudulent in conse-
quence of his being an officer or member of the corpora-
tion, see *Whitwell v. Warner*, 20 Vt. 425, 444; A. &
A. on Corp., §390; *Gordon v. Preston*, 1 Watts, 386;
*Sargent v. Webster*, 13 Met. 497; *Railroad Company v.
Claghorn*, 1 Speer's (Eq.), 562.

"But in addition to being a creditor, Buell sustained
to the company the relation of a stockholder and direc-
tor.   Such companies are essentially partnerships, ex-
cept in form.   'The directors are the trustees or man-
aging partners, and the stockholders are the *cestui que
trusts*, and have a joint interest in all of the property
and effects of the corporation.'   Per Walworth, Ch., in
*Robinson v. Smith*, 3 Paige, 222, 232; *Cunningham v.
Pell*, 5 Id. 607; *Slee v. Bloom*, 19 Johns. 479; *Hoyt v.
Thompson*, 1 Seld. 320.

"The corporation is an artificial person, owning its
property and necessarily acting by its agents; and
these agents are the directors.

"After much reflection, it seems to me that the cor-
rect view of Buell's position is this:   He is a trustee,
and the beneficiaries are the corporation, or in other
words, the stockholders; or, what is in essence the same,
he is an agent and the stockholders the principal.

"If this is the relation, then the rules of law applica-
ble to purchasers by agents and trustees, apply to the
purchase in question.   There is a manifest impropriety
in allowing the same person to act as the agent of the
seller and to become himself the buyer.   There may be,
in all such cases, a conflict between duty and interest.
Acting for himself, Buell's interest would be to obtain
payment.   Acting for the best interests of the corpora-
tions, his disinterested and unbiassed convictions of
duty might be to advise against a sale of the entire prop-
erty to one creditor, or against any sale at all.   It is in
view of these considerations that, 'the wise policy of the
law hath put the sting of a disability into the tempta-
tion, as a defensive weapon against the strength of the
danger which lies in the situation.'   Even these prin-
ciples would not, in my judgment, apply to the case, if
there had been a quorum without Buell.

"Now the purchase of property by an agent or trus-
tee, or by any person acting in a fiduciary capacity, is

[Corey v. Wadsworth *et al.*]

not void *ab origine* and absolutely. It is voidable only.
It is made subject to the right of the principal or bene-
ficiary, in a reasonable time, to say that he is not satis-
fied with it. It is valid in equity as well as law, unless
the parties interested repudiate it, or complain of it;
and these may set it aside without showing either fraud
or injury.—*Bank of Old Dominion v. Dubuque Rail-
road Co.*, 8 Iowa, 277; *Davoue v. Fanning*, 2 Johns. Ch.
252; *Bostwick v. Atkins*, 3 Comst. 53, 60; 1 Parsons
Cont., 75, 76, and cases in note; 1 Lead. Cases in Eq.,
167; *MacGregor v. Gardner*, 14 Iowa 326, 335.

"As the principal or parties interested may confirm
the sale, a *mere stranger* cannot make the objection,
that the trustee was the purchaser; or that the sale was
irregular. The remedy belongs only 'to persons who
had an interest in the property before the sale, and no
other person can apply to set aside the sale.'—*Hawley
v. Cramer*, 4 Cow. 717, 744; *Edmonson v. Welsh*, 27 Ala.
578; *Foster v. Goree*, 5 Id. 428; *Hannah v. Carrington*,
18 Ark. 85; *(Herbert v. Hanrick)*, 16 Ala. 581; *Green-
leaf v. Queen*, 1 Pet. 138; 5 Barr, 97; *Wightman v. Doe*,
24 Miss. 675.

"Adopting this as the true view, it follows that
Buell's participation in the sale and purchase of the
property did not make the same void. The utmost ef-
fect it could have would be to make the sale voidable at
the instance of any person having an interest in the
property sold. But the defendants being at that time
general creditors, and having no interest in, or lien
upon, the property, and there being no actual fraud, are
not entitled to avoid the sale, simply on the ground that
Buell was one of the three directors necessary to consti-
tute a quorum. This, in my judgment, is the correct
view to be taken of the case. But adjudged cases go
farther (and it is possible some of them go too far), and
sustain the purchase of Buell on broader grounds. I
will refer briefly to some of them. Thus, it is held that
if three persons are appointed a committee 'to finish
and repair a school house' *(Geer v. School District*, 6
Verm. 76), or to superintend the building of a church,
they may 'as effectually bind the society by a contract
concluded with one of their own number, as with a
stranger.' These cases were confirmed in *Rogers v.*

[Corey v. Wadsworth *et al.*]

*Danby Union Society,* 19 Vermont 187, where the court say 'there is perhaps some incongruity in thus allowing a person to act in a double capacity as an agent for a corporation contracting with himself. But whether a majority or the whole act, the party contracted with as well as any other, may participate in the bargain. Partiality so gross as to amount to fraud will, when sustained, defeat the contract.' In these cases the court held the objection not good, even when made by the corporation. The case of *Hayward v. The Pilgrim Society,* 21 Pick. 270, shows that where the trusteees are creditors of the society, and, therefore, interested, they may, nevertheless, vote that the treasurer execute a note to them for the amount, and it is valid."

In *Planters Bank v. Whittle,* 78 Va. 737, like questions arose and were decided in the same way, the court, by Lewis, P. J., saying: "There is no proof of actual fraud in the transactions involved, but the appellees insist that the assets of an insolvent corporation are a trust fund for the payment of its debts; that the directors or trustees for the creditors, whose duty it is to apply the assets ratably for the benefit of the general creditors, and that, therefore, they can make no lawful preferences in favor of themselves, or in favor of those creditors for whose claims they are individually responsible.

"That the directors of a corporation are bound to act in discharge of their duties with prudence, vigilance and fidelity, and to apply its assets, in the event of insolvency, for the benefit of the creditors in preference to the claims of stockholders or other persons, is a proposition which is not, and cannot be, disputed. But that they are technically trustees for the creditors, is a proposition which has never been judicially affirmed in this State, and is in conflict with the great weight of authority elsewhere. Much stress is laid by the appellees on the case of *Sawyer v. Hoag,* 17 Wall. 610. In that case the well established principle was asserted that the capital stock of a corporation, especially its unpaid subscriptions, is a trust fund for the benefit of the general creditors, which cannot be withdrawn from their reach by any act or device on the part of the directors. But no such doctrine as is here contended for

[Corey v. Wadsworth *et al.*]

was there laid down. On 'the contrary, the court recognized a distinction between the capital stock of a corporation and its ordinary assets with which, it was said, the directors may deal as they choose.

"It is not only settled that the directors may make preferences between creditors, but such preferences may be made in their own favor when they themselves are creditors of the corporation. Of course in such cases they must act with the utmost good faith, and the transactions to be upheld must be free from the taint of fraud or suspicion. This was distinctly held in the well considered case of *Buell v. Buckingham & Co.*, 16 Iowa, 284. There the controversy was between a judgment creditor of an insolvent corporation and one of its directors. An execution in favor of the former was levied on certain property which the latter claimed by purchase in discharge of a debt due him by the company. The property was sold and conveyed to him pursuant to an order made by the directors, at a meeting at which he was present and voted, his presence being necessary to make a quorum for business. The transaction was assailed by the judgment creditor as illegal and void, but it was held to be valid.

"In *Gordon v. Preston*, 1 Watts, 385, a mortgage by a corporation was held good which was assailed by creditors, on the ground, among others, that it was in favor of the president and treasurer of the company, and who were present at the meeting of the directors when the mortgage was authorized and executed. Ch. J. GIBSON delivered the opinion of the court. He said: 'That a director may sustain the relation of debtor or creditor in regard to the corporation, and in the latter receive a security, is a proposition which requires not the aid of an argument, and here the existence of a meritorious debt is not disputed.'

"In *Ashhurst's Appeal*, 60 Penn. St. 290, Judge STRONG, for the court, said: 'There must be many things which directors can do for their individual benefit which are binding upon a corporation of which they are directors. If they have advanced money, I cannot doubt they may pay themselves with corporate funds. If they have become liable as sureties for the corporation, they may provide for their indemnity. And though

[Corey v. Wadsworth *et al.*]

ordinarily the law frowns upon contracts made by them in their representative character with themselves as private persons, such contracts are not necessarily void; they are carefully watched, and their fairness must be shown.' "

The case of *Railroad Co. v. Claghorn et al.,* 1 Spear's (Eq.) 562, decided by the court of appeals of South Carolina as far back as 1844, is to the same effect. There it was insisted by general creditors that a mortgage executed to directors of a corporation to indemnify them against liability as indorsers on the company's paper was constructively fraudulent on the ground that in the execution of the mortgage the directors contracted with themselves. The validity of the transfer by the directors to themselves was sustained, the court saying: "There is, upon a superficial view, something very startling in this, if the facts be true, and they probably are as to some, perhaps all, of the indorsers; but the alarm will cease when we take into consideration the motives and influences which operate upon men to lend their credit to assist individuals or corporations to pursue their enterprises. The directors of a corporation ought to be, and generally are, better informed as to its liabilities and resources than any one else, and if they, having the means, refuse to aid them in their operations, by the loan of money or credit, no one else will be found to do it; and I need not add, what is known to all having any experience, that an overweening confidence in their capacity to manage the affairs of a corporation, and a mistaken view of the state of its finances, has often involved the stockholders, and especially the directors, in distress and ruin. No man likes to give up an enterprise in which he has embarked, until he is satisfied that it cannot succeed, and this feeling is strengthened by the numbers that are embarked in it. Few are willing to recede, whilst there are any to persevere. Now there is nothing, either in law or equity, which forbids a member, or even a director, of a corporation, from contracting with it, and like any other individual, he has a right to prescribe his own terms, which the corporation are at liberty to accept or reject, and when the contract is concluded, he stands in the same relation to the other creditors of the corpora-

tion, as any other individual would under the same circumstances. When the question of priority arises, it must depend on the *bona fides* of the transaction, fraud or no fraud. If by greater diligence, and without fraud, he has fairly gained an advantage over the other creditors, he is entitled to retain it; and I cannot, from the evidence in this case, detect the slightest ground of suspicion that there was any fraud on the part of the indorsers, in obtaining the mortgage to secure the debt of the Steam Company."—1 Speers' Equity Rep. (S. C.) 545, 562.

The Supreme Court of Vermont committed itself many years ago to the same doctrine. Speaking to the questions we have before us here, for that court that eminent jurist and commentator, Isaac F. REDFIELD, used the following language: "But it does not occur to us, that there is any just ground for charging the defendants, with the exception of Cummings, perhaps, with any actual or constructive fraud. As to constructive fraud, it is not competent, certainly, to predicate this of the mere fact of a stockholder's availing himself of his superior advantages, to obtain security for debts due to himself, to the exclusion of other debtors. The stockholder and a stranger, who are both creditors of a corporation, no doubt stand in very unequal positions. But it is an inequality which the law allows, and which is understood by those who contract with corporations, and one which will always tend, more or less, to bring in doubt the credit of such bodies. But it is a subject, with which this court have nothing to do. Some modification of the law upon this subject has been attempted, I believe,—to what purpose time must determine. We are content to leave that subject as it is. And while we would, no doubt, guard the exercise of such a privilege, in the stockholders of a corporation, with some degree of severity, we must not forget, that all just rights are entitled to a fair consideration in a court of justice. We should not, then, watch the exercise of a right with so much strictness, as to declare its mere existence to be a constructive fraud."—*Whitwell v. Warner*, 20 Vt. 425, 444.

The Supreme Court of Connecticut unequivocally declares the same doctrines. In the case of *Smith v.*

*Skeary,* 47 Conn. 47, 53-4, the following is the opinion of the court on the questions now before us: "The plaintiff, Hotchkiss, and Smith, the intestate of the other plaintiff, were stockholders and directors of the Star Tool Company, a joint stock corporation. They were creditors to the corporation to an amount exceeding six thousand dollars, which was justly due and unsecured. On the 15th day of December, 1876, pursuant to a vote of the board of directors, there were transferred to them from the corporation in payment of their claim, personal property, including that embraced in the present suit, of the value of about six thousand dollars. The corporation was in fact insolvent, although it was supposed by the parties at the time that it would be able to pay all its debts and liabilities. The transaction was in entire good faith, with no intention to defraud creditors, and there was no fraud unless the same arises as matter of law from the facts found.

"We are unable to discover any principle of law which renders the transaction fraudulent. The corporation had a right, and it was its duty, to pay this debt. These creditors had a perfect right to receive pay in money or goods, and the fact that they were stockholders and directors did not modify or abridge that right, so long as there was no actual fraudulent intent. The fact, if it be a fact, that it operated to prefer these creditors, is not sufficient at common law to stamp it as fraudulent, for the common law favored the vigilant, and a creditor might lawfully obtain a preference. It does not become fraudulent under our insolvent laws, because no proceedings in insolvency were instituted in due time, so that the case cannot be brought within the operation of those laws. The consideration was good and adequate, so that there is no badge of fraud in that respect."

In a later Iowa case the principles declared by DILLON in *Buell v. Buckingham & Co., supra,* were again announced and reaffirmed, the court saying: "May a director enforce such a debt? We understand that he may become a creditor of the corporation, may advance it money, or sell it property, and obligations of the corporation executed therefor may be enforced by him. In this regard he occupies no different position from that

of any other creditor; and, if the debt he holds was contracted in good faith, and there is an absence of fraud on his part, he may take security or payment, though the corporation be insolvent, and he may thereby acquire priority in the payment of his claim.

"Counsel for defendants admit this proposition, with an exception in the case of the insolvency of the corporation. They insist that the directors of an insolvent corporation cannot take from it security, by mortgage or other conveyance creating a lien upon its property, even though given in good faith, .and without fraud in the transaction. We are not prepared to admit this proposition. A creditor may accept payment or security from an insolvent debtor free from any claim of other creditors. A corporation may make payment of its debts, or give its property in security therefor, just as a natural person may do. If, therefore, a director holds the indebtedness of an insolvent corporation, he may take payment or security in a good faith and honest transaction. No reason can be given why a director who holds a valid debt against his corporation may not, though it be insolvent, in a fair and honest way, take its property in security. If the property, money, or other consideration of the debt, was fairly used for the benefit of the corporation, was added to its assets, or used in its business, it would be unreasonable to hold that the director is deprived of rights and remedies held by other creditors.

"It is not shown in the answer of defendants that there was any bad faith or dishonest practices on the part of the creditors for whom plaintiff is trustee, in becoming creditors of the plow company, and taking security from it. It is true that the courts will scan with care, and even with suspicion, such transactions, and demand that they be accompanied by the utmost good faith."—*Garrett v. Burlington Plow Company,* 70 Iowa 697, 701.

And in a yet later case the same court uses the following language: "Counsel for the appellant contends that the 'organization of the company by the stockholders of the old corporation was for the purpose of transferring the property of the old organization in fraud of creditors.' It is not alleged in the petition that such

[Corey v. Wadsworth *et al.*]

sale and conveyance was made with the intent and for the purpose of defrauding creditors, but that what was done amounted to an unlawful preference. In other words, we understand the claim to be that what was done amounts to a legal fraud, as distinguished from an actual fraudulent intent. If wrong in this, we find from the evidence that the defendants did not intend to defraud any one. Such was not their purpose, but they honestly believed they had the legal right to procure the mortgage, and thus secure themselves, although other creditors of the corporation were not secured or paid; and whether they had this right is the important question in this case. The evidence satisfies us that the Marshall County Company was indebted to the mortgagees in the sum of $10,000 at the time the mortgage was executed, and that such indebtedness was contracted in good faith. The mortgagees, it is true, were officers and stockholders of the corporation; but, notwithstanding this fact, they had the right to procure the corporation to execute the mortgage, although other creditors of the corporation are unable to obtain payment of their indebtedness. Corporations can make contracts, and transfer property; possessing the same powers in such respects as private individuals. (Code, §1059.) Such is the rule in the absence of a statute, and therefore it has the right to prefer one creditor to another. (2 Mor. Priv. Corp. §802.) The fact that the preference is exercised in favor of directors or shareholders of the corporation is immaterial, although the director or shareholder may have voted for the proposition, and the security given was to secure an indebtedness to himself.—*Buell v. Buckingham,* 16 Iowa, 284; *Garrett v. Burlington Plow Co.,* 70 Id. 697. It is insisted that this case is distinguished from those cited, because of the fact that *all* of the officers, directors and shareholders voted in favor of the creation of the indebtedness, and the execution of the mortgage. We do not believe this can or should make any difference. The material question is one of right and power; and, if this exists, it is immaterial whether this power is exercised by all or a part of the persons in whom the power is vested."—*Warfield, Howell & Co. v. The Marshall County Canning Co.,* 72 Iowa, 666, 669.

The Supreme Court of Missouri fully supports all the

views we have set forth in this opinion.   Among the many cases decided by that court upholding the right of director creditors of an insolvent corporation to pay themselves by a transfer of corporate property, we refer specially to two among, if not, the latest.   The opinion of the court in the case of *Schufeldt v. Smith,* 131 Mo. 280, 286 *et seq.,* is as follows:   "Most of the questions involved in this record have, in some recent cases in this court, been given careful and exhaustive consideration. The investigations given the subject have been more labored and thorough on account of apparent want of harmony in some of the previous decisions of this court, as well as on account of the diversity of opinion in other jurisdictions.   The conclusion reached by each of the divisions, which received the concurrence of all the members, may be briefly given in the language of the syllabi prepared by the judge who wrote one of the opinions as follows:

'A corporation in failing circumstances may   *   *   * prefer one creditor to another in discharging its obligations, if such preference is made in good faith while the property of the company remains in its possession, unaffected by liens or by process of law.   *   *   * Mere insolvency of a corporation does not of itself transform its assets into a trust fund for the equal benefit of all its creditors.'—*Alberger v. Bank,* 123 Mo. 313; *Slavens v. Cook Drug Company,* 128 Mo. 341; *Wagoner-Gates Milling Co. v. Commission Company,* 128 Mo. 473.

"It would seem to follow logically from these decisions that a preference may be made to a director for a debt directly due him from the corporation, unless it would be defeated by his own act in voting himself the preference.

"But it is insisted with much earnestness, and argued with great ability, that the directors had no power to bind the corporation to an agreement made with themselves, and in which they had a personal interest, and that, therefore, the resolution of the board of directors authorizing preferences to be given the members thereof over other creditors, and the deed of trust executed in pursuance thereof, were absolutely void.

"This contention must rest upon one of two theories, either that the directors of a corporation are trustees

for its creditors, and its assets constitute a trust fund which they must apply ratably toward the satisfaction of all the debts, or that such a transaction is, upon its face, constructively fraudulent.

"As has been seen, the so-called trust fund theory as applied to a corporation while dominion over its property is retained is not recognized in this State as being sound. Nothing additional need be said on that subject.

"The board of directors are undoubtedly trustees for the corporation and stockholders, and when acting for them are bound to exercise the utmost good faith. Any attempt in dealing with its property or affairs to secure themselves personal advantages over other stockholders should, at least, be subject to the most rigorous scrutiny.—*Hill v. Rich Hill, etc. Co.,* 119 Mo. 9, and cases cited.

"But it can not be said as a correct proposition of law that officers of a corporation can not themselves, and in their own names, contract with it. To so hold would virtually deny to corporations the credit upon which so much of the business of the country is transacted, and which is so essential to success. If the stockholders and officers of corporations are not permitted to advance money to them, or to indorse for them, without subjecting themselves to such disadvantages, they would be deprived of their most valuable source of credit. A corporation naturally looks to those interested in its affairs for accommodations. If directors can lend the corporation money, or indorse for it, they should certainly have the same right to collect the debts or secure themselves, as is accorded to other creditors.

"The cases cited abundantly show that a corporation, so long as it has control of its property, though insolvent, may, when acting honestly, prefer one creditor to another. A mortgage, then, giving such preference is not constructively fraudulent. Neither the corporation nor the other stockholders are injured by the preference given. To defeat them actual fraud should be shown. The honest debts all stand and should stand on equal footing. All the creditors should have equal rights to enter in the race of diligence. The fact that the race may be unequal should not deprive the winner of his reward. An individual debtor can prefer his

family, his neighbors, and his friends. If the preferred debt is honest, the preference can not be impeached, though the wife of the debtor secure the advantage. *Hart v. Leete*, 104 Mo. 338; *Riley v. Vaughan*, 116 Mo. 176. No reason can be seen why a corporation may not also prefer its friends. There is no more equity in allowing an individual debtor to prefer his creditor wife or children, than in allowing a corporation to prefer its stockholders and officers. To permit equities to control would defeat all preferences.

"While the owner of property retains the power of its disposal, he may apply it to the payment of any honest debt, is the rule upon which the right to make preferences among creditors rests. The rule should apply as well to corporations as to individuals, and any change should be made by the legislature and not by the courts. If the debt is an honest one, and the corporation had the power to contract it, it has the right to pay or secure it, and no fraud can be imputed to it from the fact that it is paid or secured in preference to another.

" 'It may be conceded,' said Judge TAFT in a recent case, 'that the trust relation justifies and requires courts of equity to subject preferences by an insolvent corporation of its own directors to the closest scrutiny, and places the burden upon the preferred director of showing, beyond question, that he had a *bona fide* debt against the corporation; but we do not see why, if a corporation may prefer one creditor over others, it may not prefer a director who is a *bona fide* creditor. Preferences are not based on any equitable principle. They go by favor, and as an individual may prefer, among his creditors, his friends and relatives, so a corporation may prefer its friends.'—*Brown v. Furniture Co.*, 58 Fed. Rep. *loc. cit.* 292. See, also, *Worthen v. Griffith*, 28 S. W. Rep. (Ark.) 286, and cases cited."

And in the yet later case of *Butler v. Harrison Land & Mining Co.*, 139 Mo. 467, the following propositions as shown by the head notes were laid down:

"1. The transfer by an insolvent corporation of its property to its directors, who are *bona fide* creditors because of money previously advanced by them to the company, is valid as against general creditors.

"2. The law does not limit the power of corporations

to transfer its property by fair dealing in the interest of
its stockholders so long as the corporation undissolved
holds the title thereto and the possession thereof.   Nor
is it true that as soon as a condition of insolvency is ap-
proached, its property is impressed with a trust for the
general good.

"3. A corporation can transfer its property to its
directors to pay money advanced to it by them in the
same way that it can use that property to pay the presi-
dent or other officer for services performed by him in
managing the business.

"4. The trial court committed error in holding that
land honestly transferred by a corporation to its direc-
tors in liquidation of subsisting debts was impressed
with a lien or trust in behalf of a third party who had
obtained a judgment against the company after such
transfer.

"5. The directors of a corporation, when *bona fide*
creditors, stand on a footing equally as good as its gen-
eral creditors; and if such corporation has in good faith
transferred its entire property to such directors in pay-
ment of an honest debt, a general creditor whose claim
was not a lien at the time of the transfer, has no
remedy."

In New Jersey also it is the established law that a
sale at a fair valuation by the directors of the property
of an insolvent corporation to themselves in payment of
just debts due them is valid as against stranger credi-
tors whose debts in consequence go unpaid.—*Wilkinson
v. Bauerle,* 41 N. J. Eq. 635, 643-5.

The Supreme Court of Arkansas, speaking by
RIDDICK, J., after utterly repudiating, as we have done,
the idea that the assets of an insolvent corporation con-
stitute a trust fund for its creditors, proceeds to discuss
the right of such corporation to prefer its directors in
the payment of debts, as follows:   "But it is contended
that the funds of an insolvent corporation are in the
hands of the directors to be disbursed on their unbiased
and impartial judgment, and that when personal inter-
est or individual gain is an element subserved through
their preference, it should be set aside as being in con-
travention of sound equitable principles.   To support
this contention, counsel cite, among other cases, the well

[Corey v. Wadsworth *et al.*]

considered case of *Mallory v. Mallory-Wheeler Co.*, 38 A. & E. Corp. Cases, 120. In that case the directors of a corporation undertook to use their official position for their own benefit, and to increase their salary, to the injury of the interests of the corporation. The familiar rule that no one acting in a fiduciary capacity shall be permitted to make use of that relation for his own benefit, at the expense of the interests of his principal, was invoked by the corporation, and applied by the court. There can be no doubt that the rule was properly applied in that case, for the directors are agents, and, to a certain extent, trustees of the corporation. They will not be allowed to enter into engagements in which they have a personal interest conflicting with the interest of their principal, whose interests they are bound to protect. The rule is of wide application, and applies, as was held in that case, to agents, partners, guardians, executors, and to trustees generally, as well as to the directors and managing officers of corporations. If personal engagements hostile to the interest of their principals are entered into by persons holding such fiduciary relations, they are not, in law, absolutely void, but voidable at the election of their principals. We do not see how that rule can apply in this case, for the party complaining here is not the corporation, but certain creditors of the corporation. The directors of a corporation are neither trustees nor agents of the creditors, and they do not occupy a fiduciary relation towards them, and, therefore, the rule does not apply.

"Although there are expressions in many of the cases cited by counsel that seem to support the contention preferences, the directors of such corporation must be that, even when an insolvent corporation may make free from personal bias in disbursing its assets and making such preferences, yet we do not believe that such a rule has any sound reason to rest upon. The very fact that preferences are made shows always that the party making them is biased more or less towards the person in whose favor they are made. As long as preferences are allowed to be made by insolvent debtors, they will be dictated more or less by the personal bias of the person making them. The individual debtor, when insolvent, and forced to make an assignment, generally

prefers his friends, and often members of his own family. The home creditor and neighbor is preferred at the expense of the non-resident one, perhaps equally deserving. So, when this dry goods company came to make an assignment, it is not strange that, in making preferences, it should favor the home creditors. The contention that the estate of an insolvent debtor should be disbursed by some one acting without bias or personal interest would apply almost as well to the case of an assignment by an insolvent individual or partnership as to that of a corporation, and, if adopted, would result in forbidding all preferences in assignments by insolvent debtors, a result that might be productive of much good, but it is one that the courts must leave to the wisdom of the legislature to accomplish; for, to quote the language of Judge CALDWELL, in *Gould v. Railroad Co.,* the right to make preferences 'is too firmly imbedded in our system of jurisprudence to be overthrown by judicial decision, and it can no more be overthrown by the courts in its application to corporations than to individuals.'—*Gould v. Railway Co.,* 52 Fed. Rep. 684. That was a case that arose in this State, and was controlled by the laws of this State, and, after an examination of the authorities, the court held that an insolvent corporation of this State may prefer its creditors, whether they be officers of the corporation or strangers.. 'The doctrine established by the best considered cases, and by the Supreme Court of the United States,' says Judge CALDWELL, in his opinion in that case, 'is that the mere fact that creditors of a corporation are directors and stockholders does not prevent their taking security to themselves as individuals to secure a *bona fide* loan of money previously made to such corporation, and used by it in conducting its legitimate business.' "—*Worthen v. Griffith,* 59 Ark. 562, 578.

The same position has been taken by the circuit court of appeals of the sixth circuit. In *Brown v. Grand Rapids Parlor Furniture Co.,* 58 Fed. Rep. 286, the court, by TAFT, Circuit Judge, say: "We now come to a question whether the fact that Harry and W. J. Long, directors, were interested as guarantors and indorsers upon most of the notes secured by the mortgages, and were directors and stockholders in the corporation, and

as such voted to give the mortages, renders the mortgages invalid.

"Several cases have been cited, some of them decisions of circuit courts of the United States, in which it has been held that, while it is lawful for a corporation to prefer creditors, it is not equitable or permissible for directors of a corporation to prefer themselves, even if they are *bona fide* creditors, because they are trustees. It may be conceded that the trust relation justifies and requires courts of equity to subject preferences by an insolvent corporation of its own directors to the closest scrutiny, and places the burden upon the preferred director of showing, beyond question, that he had a *bona fide* debt against the corporation; but we do not see why, if a corporation may prefer one creditor over others, it may not prefer a director who is a *bona fide* creditor. Preferences are not based on any equitable principle. They go by favor, and as an individual may prefer, among his creditors, his friends and relatives, so a corporation may prefer its friends."

The Supreme Court of Michigan is fully committed to the same doctrine. In *Bank v. Salt & Lumber Co.*, 90 Mich. 345, 350, opinion by MONTGOMERY, J., it is said: "Nor is it the law of this State that, as soon as a corporation becomes insolvent, the directors of the corporation become trustees for all the creditors alike, in such sense as to prevent their giving valid security by way of preference to one of the stockholders or directors. We are aware that the decisions in the various States are not uniform as to the question, and that a number of very eminent text-writers have deprecated a state of the law which admits of such preferences. But, to adopt the language of DILLON, J., in *Buell v. Buckingham*, 16 Iowa, 284, this condition of the law 'may constitute a good legislative reason for giving priority to outside creditors, but the legislature must furnish the remedy.'

"In the case referred to it was held that being an officer of the corporation did not deprive Buell of the right to enter into competition with the other creditors, and run a race of diligence with them.

"The rule in this State has, we think, been established since the case of *Town v. Bank*, 2 Doug. 530, that a corporation may, in the absense of legislative restriction,

[Corey v. Wadsworth *et al.*]

deal with its property precisely as an individual may, and may prefer one creditor over another; and hence that the assets do not become a trust fund, for *pro rata* distribution among all its creditors.   *   *   This is the substance of the rule stated in both *Town v. Bank* and *Turnbull v. Lumber Co.* And in the later case of *Kendall v. Bishop,* 76 Mich. 634, a mortgage had been given to secure the directors of the corporation, and to secure paper upon which they were indorsers.   The question under consideration was fully discussed in the briefs of counsel, and it was said by Mr. Justice Campbell:

" 'There seems to be no reason why one honest creditor should be on a worse footing than another, and we do not find in our law any such distinction.' "   See also *Lucas v. Friant,* 69 N. W. Rep. 735.

The Supreme Court of Mississippi in effect indorses the doctrine that director creditors of an insolvent corporation may prefer themselves in payment of their claims by a transfer of corporate property.—*Sells & Co. v. Rosedale Co.,* 72 Miss. 590.

In *Gould v. Little Rock Ry. Co.,* 52 Fed. Rep. 680, 684, it is said by CALDWELL, Judge, after repudiating the "trust fund" doctrine:   "It is next contended that the deed of trust is void because it was executed to secure debts due to persons who were directors of the corporation, and large holders of its stock and mortgage bonds. The money was actually advanced by the directors in good faith for the benefit of the company, and was used by the company for legitimate corporate purposes.   It was not loaned or advanced for the purpose of obtaining any advantage over the corporation or its other stockholders or creditors, but to conserve and protect the best interests of all persons interested in the property. It is obvious that the directors who made these advances did not do so from choice, or because they esteemed it a safe or profitable investment in itself.   They made the advances because the corporation stood in pressing need of the money, and its failure to get it was likely to result injuriously to all its creditors and stockholders.   The inducement to make the loan was to protect and give value to their own large interests as creditors and stockholders of the corporation; but all other creditors and stockholders, in proportion to their interests, were

[Corey v. Wadsworth *et al.*]

equally protected and benefited by the loan. Upon these facts, the deed of trust executed by the direction of the stockholders and board of directors to secure the advances previously made by these four directors to the company is a valid security. The advances constituted a valid debt against the corporation, which it was legally liable to pay, and could have been compelled to pay by suit. Where a corporation is legally liable to pay a debt, it may undoubtedly give a security for its payment. The use of its property to pay or secure a *bona fide* debt is not an unlawful use or diversion of its property, no matter what official relation the creditor sustains to the corporation. The corporation is under the same obligation to pay a *bona fide* debt due to one of its directors and stockholders that it is to pay a debt due to a stranger, and a security given for a debt due to a director and stockholder is as valid as a security given to any other creditor. The doctrine established by the best considered cases and by decisions of the Supreme Court of the United States is that the mere fact that creditors of a corporation are directors and stockholders does not prevent their taking security to themselves as individuals to secure a *bona fide* loan of money previously made to such corporation, and used by it in conducting its legitimate corporate business. Among the States maintaining this doctrine may be mentioned Vermont, Massachusetts, Connecticut, New York, New Jersey, Pennsylvania, Virginia, Illinois, Minnesota and Iowa.

"And to the same effect, see *Duncomb v. Railroad Co.*, 84 N. Y. 190, 88 N. Y. 1; *Harts v. Brown*, 77 Ill. 226; *Reichwald v. Hotel Co.*, 106 Ill. 439; *Stratton v. Allen*, 16 N. J. Eq. 229; *Wilkinson v. Bauerle*, 41 N. J. Eq. 635, 7 Atl. Rep. 514; *Bank v. Whittle*, 78 Va. 737; *Ashhurst's Appeal*, 60 Pa. St. 314; *Whitwell v. Warner*, 20 Vt. 425; *Gordon v. Preston*, 1 Watts, 386; *Sargent v. Webster*, 13 Metc. (Mass.) 497; *Kitchen v. Railway Co.*, 69 Mo. 224; *Oil Co. v. Marbury*, 91 U. S. 587.

"An exhaustive and luminous discussion of this question is found in the opinion of the Supreme Court of Minnesota, delivered by Judge MITCHELL, in the case of *Hospes v. Car Co.*, 50 N. W. Rep. 1117. The reasoning of the learned judge who delivered the opinion of the

court in that case makes it extremely clear that an insolvent corporation may prefer its creditors, whether they be officers of the corporation, or strangers; and that there is no foundation for the doctrine that the insolvency of a corporation has the effect to convert its assets into a 'trust fund,' in the technical sense of that term, and its officers into mere trustees charged with the duty of distributing its assets ratably among its creditors."

The view we have been elaborating is fully supported also by the English courts. It is there held that the assets of an insolvent corporation are not a trust fund for creditors, that its directors are not trustees for creditors, and that, of consequence, stranger creditors cannot avoid the disposition of its assets by directors in the preferential payment of their own just claims. In *In re Wincham Shipbuilding, Boiler & Salt Co.,* 9 L. R. Ch. Div. 322, the facts were that assets of the corporation were used by the directors in paying a corporate debt for which they were personally liable. The transaction was attacked by stranger creditors on the ground that the directors were trustees for them, and as such could not thus contract for their own benefit to the detriment of the complainants. Vice Chancellor BACON, agreed with them and granted relief, but on appeal the learned JESSEL, Master of the Rolls, reversed the decree, and sustained the transaction, saying: "The Vice Chancellor decided the question on this ground, that the directors were trustees of all their powers. So, no doubt, they were. But it is further said that they exercised their powers in breach of trust and for their own benefit, and, therefore, that the act which they did was nugatory. But it appears to me that the question is, for whom were they trustees? It does not appear that the Vice-Chancellor considered this point; but it makes all the difference whether they were trustees for the persons who were injured by what had been done in this case, namely, the other creditors of the company. It has always been held that the directors are trustees for the shareholders, that is, for the company. They are the managing partners of the company, and if they abuse their powers, which they hold in trust for the company, to the damage of the company, for their own benefit,

they are liable to make good the breach of trust to their *cestuis que trust* like any other trustees. But directors are not trustees for the creditors of the company. The creditors have certain rights against a company and its members, but they have no greater rights against the directors than against any other members of the company. creditors have certain rights against the directors than against any other members of the company.

"That being so, there was nothing to impose a duty on the directors not to pay a debt of the company, for which they were themselves liable, in priority to other debts, unless sect. 164 of the Act of 1862 applied, which it certainly does not in the present case. The payment to the bank was not a fraudulent preference; it was made in the ordinary course of business. It was a good payment, and could not be recovered back; therefore, the directors, although they derived a collateral advantage to themselves, did not injure their *cestuis que trust*. The payment was not any breach of duty to the only persons for whom they were trustees."

The reasoning of these authorities cannot, in our opinion, be answered. Certainly the naked assertions of some courts that the law is otherwise is not even a pretense of refutation. Surely also such logic is not met by invective. And the conclusions which they reach, the principles which they establish are not only logical and the legitimate and necessary consequence of the most familiar and elementary doctrines of the law, long recognized, but they are also in the highest decree, just and right.

The application of these principles to the case at bar leads to this result: The transfer of property by the Decatur Building Supply Company to Corey in payment of debts the company owed him, or to indemnify him against liability as indorser for the company is not rendered fraudulent and void by the facts that the corporation was insolvent, and that he was a stockholder, director and president of the corporation, and as such participated in the transaction by which his claims were thus preferred to those of complainant and other stranger creditors.

The case of *Corey v. Wadsworth* (99 Ala. 68) was directly, and the cases of *Gibson v. Trowbridge Co.* (96

Ala. 357) and *Goodyear Rubber Co. v. Scott* (96 Ala. 439) were in effect overruled by the subsequent case of *O'Bear Jewelry Co. v. Volfer,* 106 Ala. 205, which has been several times reaffirmed by this court.—*Barrett & Co. v. Pollak & Co.,* 108 Ala. 390; *Pollak Co. v. Muscogee Manufacturing Co,* 108 Ala. 467. The later case of *Mary Lee Coal & Ry. Co. v. Knox & Co.,* (110 Ala. 632), is irreconcilable with the three cases last above named, and with the foregoing opinion in the case at bar. On the point under consideration, it must be overruled.

But, as we shall presently see, the sale to and purchase by Corey of the property of the corporation was covinous and vicious wholly apart from the consideration of his personal and official relations to the company. The decree of the chancellor was, however, based equally upon those relations and upon actual fraud, and the foregoing will stand as the opinion of the court upon one of the two grounds on which his conclusion was rested, and also as supplying the reasons for our conclusion in the case of *F. Anderson et al. v. Bullock County Bank et al.,* which we now hand down.

Now as to the other question in the present case, namely: Whether the respondent Corey was under an honest liability for or held an honest debt against the Decatur Building Supply Co. commensurate in amount with the value of the property he took from the company in case of his liability or in payment of his debt, one or both, we reach the conclusion, the *onus* being on him, that he has failed to show, with that clearness and fullness which the law requires, that he received from the corporation in payment of honest debts due from the corporation to himself, or to others for which he was bound as surety or guarantor, property, which reckoned at its fair value, was only sufficient to reimburse him or to save him harmless. In reaching this conclusion we concede the integrity of the bank's claim for six thousand dollars against the Supply Company as to which he was guarantor or surety. But it is clear upon the whole evidence that he received property of considerably greater value than six thousand dollars, so that, all other questions out of the way, the transaction could not be allowed to stand. He seems to have appreciated this, and insists that the company owed him directly

about eight hundred dollars, which constituted in part the consideration for the property he received. We do not find that the company owed him this eight hundred dollars. In the first place he was very laggard in bringing forward this claim at all; so much so, indeed, that it has earmarks of afterthought. Then, his testimony as to the precise amount of the claim and the manner of its accrual is quite unsatisfactory. He, indeed, makes no pretense of an accurate statement in either respect, but in his testimony constantly refers to the books of the company to the effect that they correctly set forth the amount and upon what account the corporation incurred the debt, etc., etc. When the books, thus vouched for by him, are looked to they not only do not show that the company owed 'him this or any other sum, but to the contrary, when taken in connection with his own evidence, they affirmatively show that he was at the time of the transfer of this property to him heavily indebted to the company himself. We suppose it will not be controverted that a creditor who is also in less amount the debtor of an insolvent, cannot take property in payment except to the amount of his claim as reduced by deducting therefrom his indebtedness to the insolvent. As applied here, this rule would have allowed Corey to take property of the value of $6,000, for which he was bound to the bank, less the amount he individually and directly owed the insolvent corporation. That he took largely more than this there can be no doubt. It is true that he testifies in a general way that the property was worth less than the amount of his just claims against the company, and that it sold for less. But these conclusions of his are manifestly based upon the unfounded assumption that the company owed him about $800, independently of the bank matter, and they take no account of the fact, as we find it to be, that instead of the Supply Company owing him that sum, he was indebted to it for himself and on account of Hoy, two or three, or more thousands of dollars. Then, too, it is shown very satisfactorily that a great deal of the property he received was not estimated at its real value. For instance, he took several car loads of material— sash, blinds, doors, lumber, etc., etc.—as it came into the company's possession about the time of the sale to

[Corey v. Wadsworth *et al.*]

him, at ten per cent. off the costs at the factory, the
Supply Company paying the transportation charges.
And when added to all these considerations, attention
is had to the fact, which is inferable from the evidence
and which the chancellor found, that the goods received
by him were to a large extent ordered by the Supply
Company at his instance, his brother-in-law being gen-
eral manager and he president of the company, from
complainants in this case for the purpose of applying
them to his alleged claims against the insolvent corpor-
ation, we are driven to the conclusion that the whole
transaction was tainted with actual fraud, and that the
effect of it was not to pay a *bona fide* debt with property
of equal value, but to give a large bonus to Corey over
and beyond the amount of his just claims against the
corporation. And upon this view the decree of the chan-
cery court must be affirmed.

Affirmed.

(NOTE: The following opinion was written by Hon.
THOMAS W. COLEMAN, at the time a justice of this court.
At his suggestion the case was passed over to the pres-
ent court. The opinion has been again read and consid-
ered in consultation, and, though it has never been
adopted or concurred in by any of the judges, it is
printed here at Judge COLEMAN's request:

The present bill is purely and simply a creditor's bill,
seeking to subject the assets of the insolvent corpora-
tion which, according to the averments of the bill, were
sold and transferred to Lorenzo Corey, in fraud of cred-
itors. That complainants were creditors of the Decatur
Building Supply Co., a corporation, at the time of the
sale and transfer of the assets to Corey is not contro-
verted. That Corey was a stockholder, a director and
president of the corporation at the time of the transfer
to him, and that Hoy, the general manager, was his
brother-in-law, are admitted facts. A few days prior to
the 26th of July, 1888, the president, general manager
and other officers discussed the pecuniary condition of
the corporation and the necessity of making a general
assignment for the benefit of its creditors, and this
course was then agreed upon. Corey employed and paid

*34*

attorneys to prepare the deed for a general assignment, and the assignment was executed on July 26th, 1888. At the time of the execution of the general assignment, its indebtedness was twenty-six thousand dollars, and general creditors, other than those who are officers of the corporation, realized only fifteen per cent. of their demands, from the property assigned. There is no contention that the assignee failed to discharge his duty, or that less than their value was realized from the assets conveyed to the assignee. On and from the 19th of July to and including a part of the 26th of July, 1888, many thousands of dollars worth of its available assets, (salable property) and some choses in action, were sold and transferred and delivered to Lorenzo Corey, and by him appropriated to his own use, are facts averred in the bill and fully sustained by the proof. The complainants base their right to relief upon two propositions: *First,* that if in point of fact, Corey was bound for certain debts of the corporation as a guarantor, and that if Corey was a creditor of the insolvent corporation, being a stockholder, director and its president, and exercising a controlling influence, the law will not permit him to indemnify himself against liability as a guarantor, and to prefer himself as a creditor to all the other creditors by the purchase of the assets of the corporation in payment of his demands and liability, he at the time knowing its insolvent condition, and that it must necessarily cease to do business in a few days. *Second,* that the demands claimed by Corey to be due him were not *bona fide,* and that the transaction of the purchase of the assets was a scheme concocted at the instance of Corey to protect him and other officers of the corporation who were co-guarantors, and to wreck the corporation for his own benefit; that in the transaction actual fraud existed, and that under either aspect, Corey should be held a trustee *in invitum,* and made to account for the assets thus appropriated. The defense relied upon is, that Corey was liable as a guarantor to the Exchange Bank of Decatur for a debt of the Decatur Building Supply Company, the debtor and defendant corporation, for six thousand dollars, and that the corporation was indebted to him individually in large sums of money, advanced and loaned by him, and that he paid

[Corey v. Wadsworth *et al.*]

by checks on the Exchange Bank, payable to the Decatur Building Supply Co., six thousand dollars, with the understanding and agreement, that it was to be applied to and in payment of the debt of the corporation due the bank, for which he and other officers were bound as guarantors, and that the remainder of the property purchased by him was in satisfaction of *bona fide* debts due him from the Building Supply Company, and that the transaction was free from fraud. It was proven that Corey was also a stockholder and director in the Exchange Bank of Decatur; otherwise, it does not appear that the Exchange Bank had any knowledge of the understanding as to the means provided for the payment of this debt. A further statement of the facts can be found in the report of the case in 99 Ala. 68.

The pleading and evidence show that Lorenzo Corey, a stockholder, director and president of the Building Supply Company, a corporation, with a knowledge that it was insolvent, upon the eve of and in contemplation of a general assignment, appropriated, under the form of a purchase, largely more than half of its available assets to the payment of a debt for which he and other officers were personally bound as guarantors and in payment of debts claimed to be due him individually, thereby securing such an advantage and preference over other creditors, so that he sustained but little if any loss, while the other creditors did not realize more than fifteen per cent. of their claims. The question is, can the purchase by a director and president be sustained in a court of equity against the claims of the other creditors? Under well settled principles, such a transaction, the debts being *bona fide*, would not necessarily be fraudulent and void, if made between inviduals, although the debtor might have been hopelessly insolvent at the time, provided the assets were sold for a fair price and the debtor received no benefit from the transaction. Can the same rule be applied in favor of officers in control of corporations, after the corporations have become insolvent and ceased to do business, without doing violence to well established rules necessary to prevent undue advantage and injustice?

The direct question was settled by this court after full discussion in the case of *Gibson v. Trowbridge Co.,* (96

[Corey v. Wadsworth *et al.*]

Ala. 357), in which the court used this language: "The corporation, however, became insolvent, and he (Gibson) being a director, could not purchase its stock in trade and close its operations, and thereby make himself a preferred creditor."

In the case of *Goodyear Rubber Co. v. Scott,* in 96 Ala. 439, this court declared, that an insolvent corporation could prefer some of its creditors, but that a director or member of the governing board of an insolvent corporation was without authority to make himself a preferred creditor. In this case Scott was a guarantor or indorser of the insolvent corporation.

The direct question was again presented by demurrer to the bill in the case at bar on a former appeal (99 Ala. 68); and after thorough consideration, the conclusion was reached by the court as then constituted, that a director or governing member of the board of an insolvent corporation was not authorized to prefer himself to general creditors. True, the learned Chief Justice, who wrote the opinion, contended that the "trust fund" doctrine was the "sounder rule," a doctrine which has not been accepted by this court, and upon which the equitable principle, that a director or governing member of the board cannot prefer himself to other creditors does not depend. In the subsequent case of Mary Lee Coal & Railway Co. (110 Ala. 632), a case held under consultation for a long time, and reconsidered pending an application for a rehearing, we used the following language: "The rule that a director of an insolvent corporation cannot prefer himself, directly or indirectly, over other creditors is, but the application of a very familiar principle to the directors and stockholders of a corporation. No insolvent person who is a debtor is permitted to dispose of the property by which a benefit is reserved to himself, to the prejudice of his creditors. * * * * In one sense, corporations are entities; but corporations and the stockholders are not separate and distinct entities for all purposes and in all respects. A corporation is a collective body composed of different persons. *Railroad Co. v. Nicholas,* 98 Ala. 124; 12 South. 723; Mor. Corp., §227. Whatever is of benefit to the corporation, as a collective body, is a benefit to the stockholders

or persons of which it is composed. Corporations are controlled by, and act through, a board of directors or stockholders. When, therefore, an insolvent corporation, acting by its governing body, which, by reason of their relations to the corporation, may know its condition and have advantages superior to other creditors, sells or transfers its assets or any portion of them on such terms or conditions as to place the property beyond the reach of its creditors, and thereby protect the members, or any of them, from loss, and yet secure a benefit to those who effect the sale and transfer, whether consummated directly or through another corporation of which they are the owners and beneficiaries, such sale or transfer is in violation of the rule which prevails as to persons, and is void as to such persons making the sale, and who are thus benefited. The rule is as much a necessity to prevent fraud, injustice and undue advantage on the part of the directors and stockholders of corporations as to similar transactions between individuals. A person cannot be a debtor to and creditor of himself, but, by reason of the fact that the same persons may be the directors and stockholders of separate corporations, one of which may become the debtor of the other, and thus, though not in name and form, in fact, stockholders often sustain the relation of debtor and creditor to themselves. In arriving at the *bona fides of* transactions and motives of parties thus situated, for the prevention of fraud and undue advantage, and the administration of justice, courts should not regard corporations as separate, distinct entities, from the owners and stockholders, and sanction as valid transactions which, if done by individuals under the same circumstances, would be set aside and annulled. We would not apply, however, to corporations, whether solvent or insolvent, which have not been dissolved or ceased to do business as a going concern, a different rule than that applied to individuals acting as such in this respect, and disable them from paying some creditors at the expense of others under any and all circumstances.—*Goodyear Rubber Co. v. George D. Scott Co.,* 96 Ala. 439; 11 South. 370."

These decisions declare the law to be, that the mere insolvency of a corporation does not convert its assets

into a trust fund for its creditors; but by reason of the nature of a corporation, and the relation its governing officers bear to it, any disposition of its property after insolvency by its officers, by which they are preferred, or a benefit is reserved to themselves, over the other creditors, will be set aside as fraudulent and void at the instance of creditors. This is the conclusion reached by the great weight of authority. All the courts holding to this view do not proceed upon the same grounds. It is the logical conclusion from the "trust fund" doctrine; and the courts maintaining that rule, for the most part, declare their conclusion from it. Other courts, which do not accept the "trust fund" doctrine, as this court has done, reach the same conclusion, upon other grounds. *Beach v. Miller,* 130 Ill. 162, 17 Am. St. Rep. 291, and extended notes; *Sweeny v. Sugar Ref. Co.,* 30 W. Va. 443, 8 Am. St. Rep. 88; *LaGrange Butter Tub Co. v. Nat. Bank of Commerce,* 122 Mo. 154, (43 Am. St. Rep. 558); *Rouse v. Merchants Nat. Bank,* 46 Ohio St. 493, (15 Am. St. Rep. 644, and note); *First Nat. Bank v. Knowles,* 67 Wis. 373; *Haywood v. Lincoln,* 64 Wis. 639; *Ballin v. Merchants Bank,* 89 Wis. 278, (46 Am. St. Rep. 834, reviewing the Wisconsin cases).

These authorities refer to many others. It is true that other courts hold to a different view and declare that an insolvent corporation may prefer any creditor; even a director or president to other creditors.—*Garrett v. Burlington Power Co.,* 70 Iowa, 697, (59 Am. Rep. 461, and notes); *Worthen v. Griffith,* 59 Ark. 562, (43 Am. St. Rep. 50, and notes). The principle upon which these latter cases proceed is, that a corporation is a legal unit, in every respect as much so as an individual, and that the same rules of law must be applied to both alike. The argument, we are of opinion, proceeds from a false premise. A corporation is composed of several persons, and not of one person. It cannot act by itself, but only by agents. When the corporation increases in wealth, the enhancement redounds to the benefit of those who compose it. When it loses money, it is their loss. The persons who compose it are affected with the same infirmities of human nature, after the incorporation, as before. In all business transactions done in the name of the corporation, those engaged in accomplish-

ing these business transactions, as its managing and governing officers, are subject to the same selfish influences which would operate upon them acting in their individual names, for their personal interest. These officers are in a position to know the real condition of a corporation, an advantage not attainable by creditors generally. The maxim that the law favors the diligent, can have no just application to parties having such advantages. When an insolvent debtor prefers one creditor to another, it is of no pecuniary advantage to the debtor; and even in such cases, if he secures a benefit to himself, the preference will be set aside. If this be sound law and good morals, certainly when an insolvent corporation sells to those who make up and constitute the corporation, the same legal and moral rule is violated. Why is it that a partnership is prohibited from preferring one of its own members to the other creditors, and the same principle is not applicable to corporations dealing with its own members and officers? When a person is solvent having no creditors he can dispose of his property to whom and on such terms as he sees proper, and reserve to himself any benefit he may desire; but when he is insolvent, a different rule arises. On account of the limited liability of corporations the rule should at least be as strictly enforced against the beneficiaries as against persons. There is but one sound and practical way of dealing with insolvent corporations so as to prevent an unfair and unjust advantage by its officers and for protection of the creditors in their just rights, and that is, "to treat the officers and stockholders as the proprietors," or, as Morawetz says, always keep in mind that a corporation is an association of persons, and to apply the same rules to them as are applied to partnerships and individuals, so far as to prohibit them from acquiring the assets in preference to its general creditors.

Mr. Thompson, in his comprehensive work on Corporations, has collected and cited a great many authorities which treat of the rights of creditors to the assets of insolvent corporations, and in section 1569 declares the "trust fund" doctrine to be "nothing more than a rule which the law applies to every other debtor." He says: "In considering the power of corporations with reference to their capital and shares, it is necessary to

note a fundamental distinction between the English and American cases. In 1824 the fertile brain of Mr. Justice STORY, invented the doctrine that the capital stock of a corporation is a trust fund for the payment of its creditors; and that the creditors have an equitable lien or charge upon it superior to that of the stockholders. This has become the settled doctrine of American courts. If this doctrine means anything more than that the creditors of a corporation must be paid before its property can be distributed among its shareholders, then there would be no difference in this respect between the English and American decisions; for this is the rule which obtains in the winding up of partnerships; the partnership creditors must be paid before the individual partners can divide the social assets among themselves. And, indeed, treating the shareholders as proprietors—and this is the only practical judicial conception of their status—this rule is nothing more than that which the law applies to every other debtor; he cannot keep and enjoy his property leaving his debts unpaid." A great many authorities are cited to this text.

Upon the doctrine that an insolvent corporation can prefer its own directors, he uses the following language:

Vol. 5, §6496. "The writer wishes to weigh his words carefully, and not to speak disrespectfully of the judicial courts; but he feels that he does not characterize this doctrine in the language which it deserves, unless he calls it an infamous doctrine which is not supported by any underlying principles of justice. It gives added weight to calamity which the public suffer through the fact of nearly every form of industry passing into the hands of limited liability corporations. The infamy is intensified where the *directors* are allowed to appropriate the property of the corporation in payment of debts due from the corporation to themselves, leaving its other creditors hopelessly without remedy."

Vol. 5, §6498. "It is to be regretted that some of the American courts have carried the right of an insolvent corporation to prefer creditors to the extent of holding that it may not only prefer creditors who are its own *shareholders,* but may prefer such as are its own *directors.* This infamous doctrine has been pushed to the extent of allowing the directors and shareholders of a

corporation to prefer themselves at the expense of the creditors at large, although the director or shareholder *may have voted for the proposition.* A conception which proceeds upon a similar level is that the fact that the directors had *falsely represented to the public* by means of the letter heads on which they conducted the business correspondence of their company, that it had a certain capital, does not estop them from preferring themselves before the general creditors of the company, whom they have thus deceived in giving credit to it. It cannot escape attention that this doctrine offers a new inducement to the incorporation of every species of business, because it gives the members of corporations an advantage over their creditors which the members of a partnership do not possess. A *partnership* cannot distribute its assets to its partners in preference to its creditors; but under this miserable doctrine, if it becomes incorporated, it can do so."

Vol. 5, §6499. "It would not be profitable to quote the mouthings of judges upon this question; but it is strange that judges can be found so destitute of a sense of justice as to announce the following proposition: 'There is nothing, either in law or equity, which forbids a member, or even a director, of a corporation from contracting with it, and like any other individual, he has a right to prescribe his own terms, which the corporation is at liberty to accept or reject; and when the contract is concluded, he stands in the same relation to the other creditors of the corporation as any other individual would under the same circumstances. *When the question of priority arises it must depend on the bona fides of the transaction, fraud or no fraud. If by greater diligence and without fraud, he has fairly gained an advantage over the other creditors, he is entitled to retain it.'* Undoubtedly the directors have a right to contract with the corporation while it is a going concern, provided they do it fairly; but in general, they are the only ones whose knowledge of the internal affairs of the corporation will enable them to predict in any state of circumstances, whether it can continue a going concern or must suspend and go into liquidation; and to say that when they avail themselves of this knowledge, as against outside creditors, who have, and from the nature of the case can generally have, no such

knowledge, they are merely exercising 'greater diligence and without fraud,' is a strange perversion of language, and one which exhibits a low sense of justice. The principle under consideration does not, of course, apply to the case where directors have advanced money to the corporation in good faith, while it is a solvent and going concern, to prosecute its ordinary business, and the corporation, while still a solvent and going concern, repays this advance. Nor does the principle have any necessary connection with a case where a corporation, being in difficulties, some of its directors come to its rescue and advance money and take a mortgage to secure their present advances, and thereby help the corporation out of its difficulties and put it upon its feet so that it becomes prosperous,—after which, other of its members who failed or refused to aid in its difficulties, come forward and in a suit brought in its name, endeavor to make the directors, who have purchased its property under their mortgage at a foreclosure, account for the profit which they have realized."

In the case of *Sutton Manufacturing Co. v. Hutchinson,* 63 Fed. Rep. 496, HARLAN, J., considered the question at great length, reviewing many of the decisions of the Supreme Court of the United States, and drew the distinction between the rights and duties of the managing officers of an insolvent corporation and an individual who was not able to pay his debts. He uses the following language: "A corporation is not required by any duty it owes to creditors to suspend operations the moment it becomes financially embarrassed, or because it may be doubtful whether the objects of its creation can be attained by further effort upon its part. It is in the line of right and of duty when attempting, in good faith, by the exercise of its lawful powers and by the use of all legitimate means, to preserve its active existence, and thereby accomplish the objects for which it was created. In such a crisis in its affairs, and to these ends, it may accept financial assistance from one of its directors, and by a mortgage upon its property secure the payment of money then loaned or advanced by him, or in that mode protect him against liability then incurred in its behalf by him. Of course, in cases of that kind, a court of equity will clearly scrutinize the trans-

action, and, in a contest between general creditors and a director or managing officer who takes a mortgage upon its property, will hold the latter to clear proof that the mortgage was, executed in good faith, and was not a device to enable him to obtain an advantage for himself over those interested in the distribution of the mortgagor's property.—*Richardson's Ex'r v. Green,* 133 U. S. 30, 43, 10 Sup. Ct. 280; *Oil Co. v. Marbury,* 91 U. S. 587, 588.

"Entirely different considerations come into view when an insolvent corporation, having no expectation of continuing its business, and recognizing its financial embarrassment as too serious to be overcome, mortgages its property to secure a debt previously incurred by one of its directors, or, in a general assignment of all its property, gives him a preference. To a general assignment by a private corporation for the full benefit of all its creditors, including directors, no objection could be made, because it recognizes the equal right of creditors to participate in the distribution of the common fund. Such an assignment, Lord ELLENBOROUGH said in *Pickstock v. Lyster,* 3 Maule & S. 371, 375, is to be referred to an act of duty rather than of fraud, and is an act by the assignor that arises out of a discharge of the moral duties attached to his character of debtor to make the fund available for the whole body of creditors.

"The contention of the defendants is that in disposing of their respective properties, an individual and a corporation were recognized at common law as having equal rights; and as the former may, in the absence of a statute forbidding it, transfer the whole or part of his property with the intention or with the effect of giving a preference to some of his creditors to the exclusion of others, so an insolvent corporation, when financially embarrassed and not intending to continue in business, may make a preference among its creditors, whoever they may be, and whatever their relation to the corporation or to the property transferred. If this be a sound rule, it would follow that directors, being also creditors, of an insolvent corporation, which has abandoned the objects of its creation and ceased an active existence, may distribute among themselves its entire assets, if the reasonable value thereof does not exceed their aggregate demands. We cannot accept this view. In our

judgment, when a corporation becomes insolvent and intends not to prosecute its business, or does not expect to make further effort to accomplish the objects of its creation, its managing officers or directors come under a duty to distribute its property or its proceeds ratably among all creditors, having regard, of course, to valid liens or charges previously placed upon it. Their duty is 'to act up to the end or design' for which the corporation was created (1 Bl. Comm. 480), and when they can no longer do so their function is to hold or distribute the property in their hands for the equal benefit of those entitled to it. Because of the existence of this duty in respect to a common fund in their hands to be administered, the law will not permit them, although creditors, to obtain any peculiar advantage for themselves to the prejudice of other creditors. This rule is imperatively demanded by the principle that one who has the possession and control of property for the benefit of others—and surely an insolvent corporation, which has ceased to do business, holds its property for the benefit of creditors—may not dispose of it for its own special advantage to the injury of any of those for whom it is held. That principle pervades the entire law regulating the conduct of those who hold fiduciary relations to others, and, instead of being relaxed, should be rigidly enforced in cases of breach of duty or trust by corporate managers seeking to enrich themselves at the expense of those who have an interest equally with themselves in the property committed by law to their control. It would be difficult to overstate the mischievous results of a contrary rule, as applied to those intrusted with the management of corporate property."

The latest decision bearing on the question, to which our attention has been called, is that of *Sanford Tool Co. v. Howe, Brown & Co.*, 157 U. S. 312, the opinion delivered by Mr. Justice BREWER. In this opinion it is declared that "a corporation acting in good faith and without any purpose of defrauding its creditors, but with the sole object of continuing a business which promises to be successful, may give a mortgage to directors who have lent their credit to it, in order to induce a continuance of that credit, and to obtain renewals of maturing paper, at a time when the corporation,

[Corey v. Wadsworth *et al.*]

although it may not then in fact be possessed of assets equal at cash prices to its indebtedness, is in fact a going concern, and is intending and is expecting to continue its business." The circumstances under which a corporation, not in fact possessed of assets equal at cash prices to its indebtedness, may execute a mortgage of indemnity in favor of its directors, is stated with great care and precision, as if the court intended carefully to guard against committing itself to the conclusion under different circumstances. The case of the *Sutton Manufactauring Co., supra,* is cited in the opinion, without an intimation of disapproval of any of its statements. It is impossible to read the opinion of Mr. Justice BREWER, *supra,* without being impressed with the conclusion, that the court would not uphold a mortgage to indemnify directors of an insolvent corporation made with a knowledge of its insolvency, having no intention to continue its business or aid it, but in anticipation of its speedy termination as a going concern, the effect of which transaction merely secured a preference over other creditors. On page 319, Mr. BREWER says: "Carrying on business after the giving of an indemnifying mortgage, with a knowledge of insolvency, with the expectation of soon winding up the affairs of the corporation, and only for the sake of giving an appearance of good faith, leaves the transaction precisely as though the mortgage was executed at the moment of distribution, and with the view of a personal preference."

The illustration that a line drawn, with the insolvent debtor and his insufficient property on one side, and the creditors and their claims on the other side, and that the passing of the property to *somebody on the other side,* is what the law demands, is misleading and fallacious. The fundamental difference is overlooked. In the case of the insolvent corporation, on one side of the line stands the director having the power to dispose of the insufficient property, and on the other side of the line this same director is ranged with the other creditors with his claim. The grantor and the grantee are one and the same person. No amount of argument or assertion can ever satisfy an impartial judgment that the general creditors stand upon equal footing with a creditor who has the power to dispose of the assets subject to debts. Under such conditions to apply the rule that

the law favors the diligent perpetrates a travesty on justice. We do not believe, in any case, has it ever been contended, that it is right to permit a grantor to convey directly to himself, to the injury of creditors of the conveyed assets. The only escape from such an obnoxious rule, is to refuge behind the doctrine that a corporation is in law and must be regarded for all purposes as a single individual. With this circumstance out of the way, there is nothing left to support the doctrine that a controlling officer of an insolvent corporation may prefer himself to all other creditors.

In the case of *Mobile & Ohio Railroad Co. v. Nicholas,* 98 Ala. 92, one of the principal questions settled involved this question. The case was one of unusual importance, discussed orally and at great length by written argument by eminent counsel, and after thorough discussion and great deliberation, this court unanimously approved the declaration that for any purposes, a corporation was not in reality a person or thing distinct from its constituent parts. It required no statute to authorize stockholders as such to resort to courts of equity for protection against the corporation of which they were constituent parts, and yet an individual cannot maintain an action against himself. Many individuals are wealthy by reason of their stock in corporations. The debt of the corporation and the appropriation of its assets to the payment of its debt, lessens the individual wealth of the owner of its stock. Whatever affects the interest of the corporation affects the pecuniary values of the stockholder in his individual capacity. The fact that by law the property of an individual partner may be subjected to the payment of partnership debts, and the liability of a stockholder for the debts of the corporation is limited to his corporate interest, emphasizes the fact that the debt of the corporation is his individual debt to the extent of his corporate interest. It is noticeable that so many of the authorities which announce the conclusion that the directors of an insolvent corporation may prefer themselves to other creditors, seemingly admit that the contrary rule is the sounder and more just, but hold that it requires legislation to authorize the courts to so hold. This conclusion proceeds solely from the premise, that courts cannot

distinguish between the members associated as a corporation under a corporate name and with corporate privileges and the corporation as a unity—a holding contrary to every-day practice in the courts in other matters, and contrary to obvious facts and many adjudications.

Independent of these considerations there stands the undisputed fact, that the directors of an insolvent corporation whose skill and supposed integrity have induced the credit and confidence of the business public, without warning of its tottering condition and approaching dissolution, a condition known to the directors and by them kept concealed from the confiding public, conscious that the creditors, if perchance they should come to a knowledge of its condition, will be forced to the slow process of suit; they can by a simple transaction of purchase from the corporation which they alone can execute, secure all its assets in satisfaction of their claims and demands. Of course, being the governing board, they know exactly how far to trust the electrified corpse, and when to act for their own security. No others can know. They are not deceived. It is in their power and theirs alone to see that they are fully paid. They run no risk in giving credit. When the creditors complain, they must be content with the reply that the "law favors the diligent," that "our credit and money have kept the concern apparently alive for the past. True, you were deceived, and we were not, but that is your misfortune. We are in control of the assets, and will pay ourselves."

This court, in four decisions cited above, has deliberately condemned such a transaction as unjust and fraudulent. Justice and fair dealing must be against it. The great weight of authority is against it. We cite from brief of counsel a few decisions which have been verified, out of the many which might be cited: "The allowance of preferences was termed a 'pernicious doctrine' in *Conover v. Hull*, 45 Am. St. Rep. 810; 10 Wash. 673. 'At variance with the whole theory of the law.'—2 Morawetz, §803. 'The law does not intend or allow such an application.'—*Sicardi v. Keystone Co.*, (Pa.), 24 Atl. Rep. 163; 149 Pa. St. 148. 'Weight of authority and reason was against the validity of such preferences.' *Howe v. Sanford Co.*, 44 Fed. Rep. 231. 'It is a doctrine

which is at variance with the whole theory of the law covering the rights of creditors of insolvent corporations.'—*Rouse v. Bank*, 5 L. R. A. 378, (383), 46 Ohio St. 493.' \* \* \* \* \* \* 'Is entitled to take precedence among the many reckless absurdities,' etc. Wait Insolv. Corp., §162. 'Great *weight* of authority denies the right.'—Editorial note, 22 L. R. A. 807. 'Could not be rightfully done.'—*Sutton v. Mfg. Co.*, 11 C. C. A. 321; 63 Fed. Rep. 496.

"The invalidity of such preferences has been said to be '*well settled*.'—*Bonney v. Tilley*, 109 Cal. 346. This is said to be 'in line with the *great weight of modern authority*.'—*Tilson v. Downing*, (Neb.) 63 N. W. Rep. 837. 'The conservative and preservative tendency of the courts \* \* \* has been to establish and maintain the doctrine' (of invalidity).—*Northwestern &c. Co. v. Cotton &c.*, 70 Fed. Rep. 155. 'A careful perusal of what is said by the leading text writers on the subject, and a *laborious* examination of the cases to which they refer, has convinced us that the *decided weight* of American authority is as indicated.'—*Lowery Co. v. Empire Co.*, 17 S. E. Rep. 968; 91 Ga. 624. '*The rule* which prohibits directors, when a corporation is insolvent and about to go into liquidation, from preferring debts due to themselves,' etc.—*Adams v. Milling Co.*, 35 Fed. Rep. 433. 'The modern authorities, almost without exception, utter the same strong condemnatory language.'—*Corey v. Wadsworth*, 99 Ala. 68.

" 'That appellants came within the prohibition of this *rule* is beyond controversy.'—*Roseboom v. Warner*, 23 Northeastern Rep. 339; 132 Ill. 81 (directly in point). 'This *principle* was applied to the taking of a mortgage by the directors on the property of the corporation to secure their liability as sureties on the note of the corporation.'—*Haywood v. Lumber Co.*, 64 Wis. 639. 'It seems *to be well settled that* the directors of an insolvent corporation \* \* \* \* cannot secure to themselves any preference \* \* \* .'—*Bonney v. Tilley*, 42 Pac. Rep. 439; 109 Cal. 346.

" 'It appears to be *well settled by authority*.'—*W. P. Noble &c. Co. v. Mt. Pleas. Inst.*, (Utah), 42 Pacific Rep. 869. In speaking of cases holding to the same effect, it was said in *Tillson v. Downing*, (Neb.), 63 N. W. Rep.

[Corey v. Wadsworth *et al.*]

837: 'We think both these cases are in line with the *great weight* of modern authority.' This is said, in 1 Beach. Priv. Corp. 241, to be a 'general rule.' 'The only *just* and equitable *rule.*'—Editorial Note, *Conover v. Hull,* 45 Am. St. Rep. 835; 10 Wash. 673. 'A general rule.'—17 Am. & Eng. Encyc. of Law, 122. 'The above case is clearly in accord with the *weight* of authority.' Editorial Note to *Corey v. Wadsworth,* 23 L. R. A. 618; *Lyons v. Perry,* 22 L. R. A. 802; 86 Texas, 143; *Rouse v. Bank,* 46 Ohio St. 493."

No satisfactory argument has been adduced to show that this court should depart from its settled doctrine, and certainly none which has not been met and successfully controverted in one or more of the decisions cited.

The 15th paragraph of the amended answer avers that "Corey is the owner and possessor of a large indebtedness of the Building Supply Company, which was existing at the time of the assignment; and that the same has been assigned and transferred to him, and that it amounts to about $5,000, besides $1,500 mentioned in the original answer, and he claims to be a creditor," etc. The prayer is, that the answer be taken as a cross-bill, and that he be allowed to share in the distribution. To the cross-bill the complainant demurred, and among others assigned substantially as a ground of demurrer, that the claims set up in the cross-bill were not described with sufficient definiteness to enable the complainant to tell whether the claims were by account, or note, nor from whom, nor when obtained. The demurrer to the cross-bill was well taken and properly sustained.

The evidence of the respondent, that the corporation was indebted to him, other than the debt due the Exchange Bank, is not clear nor satisfactory. He testified in a general way that the property purchased by him, was in payment of advances and loans made by him, but when these advances were made, in what amounts, and how evidenced, is not stated, though he was interrogated thereto. The most that could be obtained from him as to the price of the goods, was that he did not remember, but that the books of the company would show. The account taken from the books, and the testimony of Poley, who kept the books in part, and was an officer, does

not sustain Corey. We are satisfied that the decree of the chancery court has done the appellant no injury, and that there is no error of which he can complain.)